1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CHIRON CORPORATION                    No   C 04-4293 VRW
SECURITIES LITIGATION
                                                 PROPOSED NOTICE OF
_____/             PROPOSED SETTLEMENT

To whom it may concern:

        You are receiving this letter because you or an entity in
which you have an interest or an entity or person for which you
have responsibility may have purchased or otherwise acquired shares
of Chiron common stock between July 23, 2003 and October 5, 2004.
As such, you may be a member of a proposed class of shareholders in
a class action lawsuit currently pending before Chief Judge Vaughn
R Walker in the United States District Court for the Northern
District of California.  The lead plaintiff in the lawsuit,
International Union of Operating Engineers Local No. 825 Pension
Fund, has agreed to terms of a settlement with the defendants,
Novartis Vaccines and Diagnostics, Inc, and certain Chiron
executives (Novartis acquired Chiron in 2006).

The court must determine whether the proposed settlement is fair, and it is seeking your help in doing so.  If the court approves the settlement and certifies the proposed class, all class members who do not opt out of the class will be bound by the settlement terms and unable to seek other recourse against the defendants for the claims alleged in this lawsuit.

Please read the information below and the enclosed notice.  If you have any comments about the proposed settlement, please email the court at XXXXXX@cand.uscourts.gov.  Please include your name, the purchase and sale dates of any Chiron stock you acquired between July 23, 2003 and October 5, 2004, and the number of shares you acquired or sold on each date.

ABOUT THE CASE

Chiron is a California-based pharmaceuticals company focused on developing products for cancer and infectious diseases. One of its products is a flu vaccine marketed under the name Fluvirin.  Chiron manufactures Fluvirin in a plant near Liverpool, England.

The plaintiffs in this lawsuit allege that on July 23, 2003, Chiron issued a press release reporting strong growth in income and revenues for the second quarter of 2003.  Plaintiffs allege that, following the press release, Chiron executives conducted a conference call with analysts favorably representing the Liverpool plant's ability to satisfy the US market for Fluvirin for the 2004-2005 flu season.

On August 26, 2004, Chiron announced that it would delay shipment of Fluvirin pending an investigation after internal

United States District Court

For the Northern District of California

testing identified a number of lots with sterility problems.
Chiron announced that the investigation would delay Fluvirin
shipments until early October and would prevent the company from
recognizing Fluvirin revenue in the third quarter of 2004.  The
closing price of Chiron's common stock dropped from $47.49 per
share on August 26, 2004 to $43.41 per share on August 27.

On October 5, 2004, Chiron announced that British
pharmaceutical regulators had temporarily suspended the company's
license to manufacture Fluvirin in the Liverpool plant, preventing
the company from releasing any Fluvirin during the 2004-2005 flu
season.  Chiron's common stock price dropped from $45.42 per share
on October 4, 2004 to $37.98 per share on October 5.

Plaintiffs allege that Chiron and its executives misled
investors by intentionally overstating their ability to manufacture
Fluvirin.  The lawsuit seeks money damages from the defendants for
violations of federal securities laws.  The lead plaintiffs
estimate the total losses incurred by purchasers of Chiron common
stock between July 23, 2003 and October 5, 2004 to be $279.9
million.

The lead plaintiff and Novartis agreed to terms of a
proposed settlement on March 29, 2007.  This settlement was reached
at an early stage in the litigation, before substantial discovery
was conducted into the merits of plaintiffs' allegations.  A copy
of the proposed settlement agreement (Doc #100) and the proposed
notice to potential class members (Doc #100-3) can be found, along
with a complete record of this litigation, at www.XXXXX.com.

On November 30, 2007, the court denied preliminary
approval of that proposed settlement; the reasons for the denial

3

1    are set forth in a written order (Doc #130) available at

2    www.XXXXX.com.

3

4    <u>TERMS OF PROPOSED SETTLEMENT</u>

5            The lead plaintiff and Novartis have submitted a new

6    settlement agreement and class notice to the court.  The class

7    notice is enclosed, and the settlement agreement is available

8    online as Doc #XX at www.XXXXX.com.

9            Under the proposed settlement, Novartis will pay $30

10   million plus interest from June 30, 2006.  Of this amount, 17

11   percent ($5.1 million) will be paid to lead plaintiff's attorneys

12   and approximately $200,000 will go toward attorney expenses.  Thus,

13   approximately $24.7 million (excluding interest) will be

14   distributed among class members who do not opt out of the

15   settlement.  Lead plaintiffs estimate that the proposed class

16   includes approximately 36 million shares of Chiron stock;

17   therefore, the average recovery per share will be approximately

18   $0.69.

19           The amount actually recovered for each share will depend

20   on when the share was purchased, when, if at all, it was sold, and

21   the purchase and sale prices.  The plan of allocation under the

22   proposed settlement is detailed in the enclosed class notice at

23   page XX.

24           If 1.4 million or more shares opt out of the proposed

25   settlement, Novartis will have the right to terminate the

26   settlement.

27

28

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

## THE COURT'S CONCERNS

Although the new proposed settlement and class notice address some of the court's concerns regarding the first proposed settlement and notice, the court has several remaining concerns:

### Quality of the Settlement

The $30 million settlement represents 10.7 percent of the $279.9 in losses that lead plaintiff estimates class members suffered during the class period.  Lead plaintiff notes that the provable damages in this case might be far less than $279.9 million because the declines in the Chiron stock price following the August 26 and October 5, 2004 disclosures may not be fully attributable to the alleged concealment by Chiron and its executives.  It is also true that continuing this litigation may result in no recovery at all.  Lead plaintiff argues that a settlement of 10.7 percent of estimated damages compares very favorably to settlements in other securities class actions, noting that in 2006, the median settlement in securities class actions was 2.2 percent of estimated losses.  See Todd Foster, et al, "Recent Trends in Shareholder Class Action Litigation: Filings Plummet, Settlements Soar," available at www.nera.com.

It is difficult for the court to say whether the lead plaintiff's favorable characterization of the settlement is accurate.  Another method of evaluating securities class action settlements compares the amount of the settlement with the one-day drop in the defendant company's market value at the end of the class period.  The court estimates that Chiron's market value declined $1.39 billion between October 4 and October 5, 2004.  The

5

**United States District Court**
For the Northern District of California

proposed $30 million settlement represents approximately 2.16 percent of Chiron's one-day market value decline; in 2006, the median securities class action settlement was 3.5 percent of the market value drop in cases where the one-day market value drop was over $500 million.  See Laura E Lyons & Ellen M Ryan, "Securities Class Action Settlements: 2006 Review and Analysis," available at www.cornerstone.com.  By this measure, the proposed settlement does not compare favorably to the average securities class action settlement in 2006.

The court does not suggest that the latter measure is a more accurate method for evaluating the quality of the proposed settlement.  The court merely offers this as an illustration of another way of evaluating the proposed settlement by comparison to published statistics.  The court suggested appointing a neutral expert to evaluate the settlement, but the lead plaintiff objected.  See Doc ##145, 146 and 147 at www.XXXXX.com.  Consequently, class members are encouraged to make their own evaluation.

Attorney Fees

The court is also concerned that lead plaintiff's attorney fee request may be unreasonably high.  Lead plaintiff's counsel request 17 percent of the class recovery, or $5.1 million; this is a reduction from the $7.5 million requested in the first proposed settlement.  Although courts often award attorney fees of 25 percent of the class recovery, it is appropriate to compare the fee request with the amount of work performed by lead plaintiff's attorneys.  Lead plaintiff's attorneys spent 2017.5 hours working on this case before the submission to the court of the first

United States District Court

For the Northern District of California

proposed settlement.  At hourly rates used by the court, lead plaintiff's counsel could bill $718,236.81 for this work.  Thus, the requested award of $5.1 million is 7.1 times higher than what lead plaintiff's counsel might reasonably have received had they billed hourly rates for their work.

Lead plaintiff's counsel argues that the court's calculation of reasonable hourly rates is too low.  See Doc #151, pages 4-7, at www.XXXXX.com.  Using the hourly rates proposed by lead plaintiff's counsel, lead plaintiff's counsel could bill approximately $993,969.27 for their work.  The requested fees of $5.1 million using this measure would be approximately 5.13 times more than lead plaintiff's counsel would receive if they had billed their time at their proposed rate.

Class counsel are entitled to receive a reasonable fee for any recovery they obtain for the class.  You should consider counsel's proposed fee request in deciding whether you wish to accept the settlement.

It is appropriate for lead plaintiff's attorneys – who represent lead plaintiffs on a contingent basis – to receive some multiple of their hourly rate; this compensates them for the risk of no compensation at all when they undertake litigation such as this.  It also may be appropriate to increase the multiplier further if the settlement achieved for the class is particularly valuable or the work performed by lead plaintiff's counsel particularly difficult.  Plaintiff's counsel often receive two to four times their reasonably hourly rates for work on securities class action settlements.  A fuller discussion of reasonable attorney fees can be found at Doc #130, pages 9-21, at

**7**

www.XXXXX.com.

## Novartis Counsel's Representation of Attorneys from Lead Plaintiff's Law Firm

It has come to the court's attention that Novartis's law firm in this litigation, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), employs two attorneys who represented clients in connection with a criminal investigation of employees of the law firm of Milberg, Weiss, Bershad, Hynes & Lerach LLP ("Milberg Weiss") beginning in October 2003. The Milberg Weiss attorneys represented by Skadden left the Milberg Weiss firm in May 2004, when the Milberg Weiss firm split into Lerach, Coughlin, Stoia, Geller, Rudman, Robbins LLP ("Lerach Coughlin") and what became Milberg LLP. The Milberg Weiss attorneys represented by Skadden joined Lerach Coughlin; lead plaintiff is now represented by Milberg LLP. Novartis's attorneys represent to the court that the two Skadden attorneys who represented the Milberg Weiss employees joined Skadden in January 2006 and that they have not been involved in this litigation in any way. They further represent that the Milberg Weiss employees who were represented by Skadden did not participate in any way in this litigation.

While it does not appear to the court that there is evidence of misconduct between Novartis's counsel and lead plaintiff's law firm or any other impropriety, the existence of the connection between lead plaintiff's law firm and Skadden may be relevant to your evaluation of the settlement. For a fuller discussion of this issue, including a declaration by the Skadden attorney involved, see Doc #130 at 29-35 and Doc #152, Exh 2 and 3,

at www.XXXXX.com.


<u>HOW TO PROVIDE FEEDBACK</u>

Before deciding whether to approve the proposed
settlement, the court wishes to receive comments from potential
class members.  The court is particularly interested in your
thoughts on whether the settlement itself is fair and whether the
requested attorney fees are reasonable.

If you have any comments about the proposed settlement,
please email the court at XXXXXX@cand.uscourts.gov.  Please include
your name, the purchase and sale dates of any Chiron stock you
acquired between July 23, 2003 and October 5, 2004, and the number
of shares you acquired.  COMMENTS WILL BE ACCEPTED UNTIL THIRTY
DAYS AFTER THE DATE OF THIS MAILING.


<u>WHAT HAPPENS NEXT</u>

After reviewing the comments it receives, the court will
decide whether to approve the proposed settlement.  If the proposed
settlement is approved, you will receive a claim form and
instructions on its submission.  You must submit a claim form to
receive any recovery from this settlement.  If the court approves
the settlement, but it is not satisfactory to you, you may opt out
of the settlement.  In that event, you will receive nothing from
this settlement but may bring your own action to obtain a recovery.

If the court does not approve the settlement, the
litigation will continue, but the lead plaintiff and class counsel
may decide to abandon it, in which case class members would receive
nothing unless they brought their own lawsuits or a new class

action were filed.  Furthermore, if class members holding more than 1.4 million shares opt out of the settlement, Novartis may withdraw from the settlement.

**United States District Court**

For the Northern District of California