1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CHIRON CORPORATION            No   C 04-4293 VRW
SECURITIES LITIGATION
                                    PROPOSED NOTICE OF
_____/  PROPOSED SETTLEMENT

To whom it may concern:

        You are receiving this letter because you or an entity in
which you have an interest or an entity or person for which you
have responsibility may have purchased or otherwise acquired shares
of Chiron common stock between July 23, 2003 and October 5, 2004.
As such, you may be a member of a proposed class of shareholders in
a class action lawsuit currently pending before Chief Judge Vaughn
R Walker in the United States District Court for the Northern
District of California.  The lead plaintiff in the lawsuit,
International Union of Operating Engineers Local No. 825 Pension
Fund, has agreed to terms of a settlement with the defendants,
Novartis Vaccines and Diagnostics, Inc, and certain Chiron
executives (Novartis acquired Chiron in 2006).

The court must determine whether the proposed settlement is fair, and it is seeking your help in doing so. If the court approves the settlement and certifies the proposed class, all class members who do not opt out of the class will be bound by the settlement terms and unable to seek other recourse against the defendants for the claims alleged in this lawsuit.

Please read the information below and the enclosed notice. If you have any comments about the proposed settlement, please email the court at XXXXXX@cand.uscourts.gov. Please include your name, the purchase and sale dates of any Chiron stock you acquired between July 23, 2003 and October 5, 2004, and the number of shares you acquired or sold on each date.

## ABOUT THE CASE

Chiron is a California-based pharmaceuticals company focused on developing products for cancer and infectious diseases. One of its products is a flu vaccine marketed under the name Fluvirin. Chiron manufactures Fluvirin in a plant near Liverpool, England.

The plaintiffs in this lawsuit allege that on July 23, 2003, Chiron issued a press release reporting strong growth in income and revenues for the second quarter of 2003. Plaintiffs allege that, following the press release, Chiron executives conducted a conference call with analysts favorably representing the Liverpool plant's ability to satisfy the US market for Fluvirin for the 2004-2005 flu season.

On August 26, 2004, Chiron announced that it would delay shipment of Fluvirin pending an investigation after internal

testing identified a number of lots with sterility problems. Chiron announced that the investigation would delay Fluvirin shipments until early October and would prevent the company from recognizing Fluvirin revenue in the third quarter of 2004.  The closing price of Chiron's common stock dropped from $47.49 per share on August 26, 2004 to $43.41 per share on August 27.

On October 5, 2004, Chiron announced that British pharmaceutical regulators had temporarily suspended the company's license to manufacture Fluvirin in the Liverpool plant, preventing the company from releasing any Fluvirin during the 2004-2005 flu season.  Chiron's common stock price dropped from $45.42 per share on October 4, 2004 to $37.98 per share on October 5.

Plaintiffs allege that Chiron and its executives misled investors by intentionally overstating their ability to manufacture Fluvirin.  The lawsuit seeks money damages from the defendants for violations of federal securities laws.  The lead plaintiffs estimate the total losses incurred by purchasers of Chiron common stock between July 23, 2003 and October 5, 2004 to be $279.9 million.

The lead plaintiff and Novartis agreed to terms of a proposed settlement on March 29, 2007.  This settlement was reached at an early stage in the litigation, before substantial discovery was conducted into the merits of plaintiffs' allegations.  A copy of the proposed settlement agreement (Doc #100) and the proposed notice to potential class members (Doc #100-3) can be found, along with a complete record of this litigation, at www.XXXXX.com.

On November 30, 2007, the court denied preliminary approval of that proposed settlement; the reasons for the denial

3

1   are set forth in a written order (Doc #130) available at

2   www.XXXXX.com.

3

4   <u>TERMS OF PROPOSED SETTLEMENT</u>

5           The lead plaintiff and Novartis have submitted a new

6   settlement agreement and class notice to the court.  The class

7   notice is enclosed, and the settlement agreement is available

8   online as Doc #XX at www.XXXXX.com.

9           Under the proposed settlement, Novartis will pay $30

10  million plus interest from June 30, 2006.  Of this amount, 17

11  percent ($5.1 million) will be paid to lead plaintiff's attorneys

12  and approximately $200,000 will go toward attorney expenses.  Thus,

13  approximately $24.7 million (excluding interest) will be

14  distributed among class members who do not opt out of the

15  settlement.  Lead plaintiffs estimate that the proposed class

16  includes approximately 36 million shares of Chiron stock;

17  therefore, the average recovery per share will be approximately

18  $0.69.

19          The amount actually recovered for each share will depend

20  on when the share was purchased, when, if at all, it was sold, and

21  the purchase and sale prices.  The plan of allocation under the

22  proposed settlement is detailed in the enclosed class notice at

23  page XX.

24          If 1.4 million or more shares opt out of the proposed

25  settlement, Novartis will have the right to terminate the

26  settlement.

27

28

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

THE COURT'S CONCERNS

    Although the new proposed settlement and class notice
address some of the court's concerns regarding the first proposed
settlement and notice, the court has several remaining concerns:

Quality of the Settlement

    The $30 million settlement represents 10.7 percent of the
$279.9 in losses that lead plaintiff estimates class members
suffered during the class period.  Lead plaintiff notes that the
provable damages in this case might be far less than $279.9 million
because the declines in the Chiron stock price following the August
26 and October 5, 2004 disclosures may not be fully attributable to
the alleged concealment by Chiron and its executives.  It is also
true that continuing this litigation may result in no recovery at
all.  Lead plaintiff argues that a settlement of 10.7 percent of
estimated damages compares very favorably to settlements in other
securities class actions, noting that in 2006, the median
settlement in securities class actions was 2.2 percent of estimated
losses.  See Todd Foster, et al, "Recent Trends in Shareholder
Class Action Litigation: Filings Plummet, Settlements Soar,"
available at www.nera.com.

    It is difficult for the court to say whether the lead
plaintiff's favorable characterization of the settlement is
accurate.  Another method of evaluating securities class action
settlements compares the amount of the settlement with the one-day
drop in the defendant company's market value at the end of the
class period.  The court estimates that Chiron's market value
declined $1.39 billion between October 4 and October 5, 2004.  The

5

proposed $30 million settlement represents approximately 2.16 percent of Chiron's one-day market value decline; in 2006, the median securities class action settlement was 3.5 percent of the market value drop in cases where the one-day market value drop was over $500 million.  See Laura E Lyons & Ellen M Ryan, "Securities Class Action Settlements: 2006 Review and Analysis," available at www.cornerstone.com.  By this measure, the proposed settlement does not compare favorably to the average securities class action settlement in 2006.

The court does not suggest that the latter measure is a more accurate method for evaluating the quality of the proposed settlement.  The court merely offers this as an illustration of another way of evaluating the proposed settlement by comparison to published statistics.  The court suggested appointing a neutral expert to evaluate the settlement, but the lead plaintiff objected.  See Doc ##145, 146 and 147 at www.XXXXX.com.  Consequently, class members are encouraged to make their own evaluation.

<u>Attorney Fees</u>

The court is also concerned that lead plaintiff's attorney fee request may be unreasonably high.  Lead plaintiff's counsel request 17 percent of the class recovery, or $5.1 million; this is a reduction from the $7.5 million requested in the first proposed settlement.  Although courts often award attorney fees of 25 percent of the class recovery, it is appropriate to compare the fee request with the amount of work performed by lead plaintiff's attorneys.  Lead plaintiff's attorneys spent 2017.5 hours working on this case before the submission to the court of the first

**United States District Court**
For the Northern District of California

6

proposed settlement.  At hourly rates used by the court, lead
plaintiff's counsel could bill $718,236.81 for this work.  Thus,
the requested award of $5.1 million is 7.1 times higher than what
lead plaintiff's counsel might reasonably have received had they
billed hourly rates for their work.

Lead plaintiff's counsel argues that the court's
calculation of reasonable hourly rates is too low.  See Doc #151,
pages 4-7, at www.XXXXX.com.  Using the hourly rates proposed by
lead plaintiff's counsel, lead plaintiff's counsel could bill
approximately $993,969.27 for their work.  The requested fees of
$5.1 million using this measure would be approximately 5.13 times
more than lead plaintiff's counsel would receive if they had billed
their time at their proposed rate.

Class counsel are entitled to receive a reasonable fee
for any recovery they obtain for the class.  You should consider
counsel's proposed fee request in deciding whether you wish to
accept the settlement.

It is appropriate for lead plaintiff's attorneys – who
represent lead plaintiffs on a contingent basis – to receive some
multiple of their hourly rate; this compensates them for the risk
of no compensation at all when they undertake litigation such as
this.  It also may be appropriate to increase the multiplier
further if the settlement achieved for the class is particularly
valuable or the work performed by lead plaintiff's counsel
particularly difficult.  Plaintiff's counsel often receive two to
four times their reasonably hourly rates for work on securities
class action settlements.  A fuller discussion of reasonable
attorney fees can be found at Doc #130, pages 9-21, at

United States District Court
For the Northern District of California

www.XXXXX.com.

## Novartis Counsel's Representation of Attorneys from Lead Plaintiff's Law Firm

It has come to the court's attention that Novartis's law firm in this litigation, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), employs two attorneys who represented clients in connection with a criminal investigation of employees of the law firm of Milberg, Weiss, Bershad, Hynes & Lerach LLP ("Milberg Weiss") beginning in October 2003. The Milberg Weiss attorneys represented by Skadden left the Milberg Weiss firm in May 2004, when the Milberg Weiss firm split into Lerach, Coughlin, Stoia, Geller, Rudman, Robbins LLP ("Lerach Coughlin") and what became Milberg LLP. The Milberg Weiss attorneys represented by Skadden joined Lerach Coughlin; lead plaintiff is now represented by Milberg LLP. Novartis's attorneys represent to the court that the two Skadden attorneys who represented the Milberg Weiss employees joined Skadden in January 2006 and that they have not been involved in this litigation in any way. They further represent that the Milberg Weiss employees who were represented by Skadden did not participate in any way in this litigation.

While it does not appear to the court that there is evidence of misconduct between Novartis's counsel and lead plaintiff's law firm or any other impropriety, the existence of the connection between lead plaintiff's law firm and Skadden may be relevant to your evaluation of the settlement. For a fuller discussion of this issue, including a declaration by the Skadden attorney involved, see Doc #130 at 29-35 and Doc #152, Exh 2 and 3,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  at www.XXXXX.com.

2

3  <u>HOW TO PROVIDE FEEDBACK</u>

4          Before deciding whether to approve the proposed

5  settlement, the court wishes to receive comments from potential

6  class members.  The court is particularly interested in your

7  thoughts on whether the settlement itself is fair and whether the

8  requested attorney fees are reasonable.

9          If you have any comments about the proposed settlement,

10 please email the court at XXXXXX@cand.uscourts.gov.  Please include

11 your name, the purchase and sale dates of any Chiron stock you

12 acquired between July 23, 2003 and October 5, 2004, and the number

13 of shares you acquired.  COMMENTS WILL BE ACCEPTED UNTIL THIRTY

14 DAYS AFTER THE DATE OF THIS MAILING.

15

16 <u>WHAT HAPPENS NEXT</u>

17         After reviewing the comments it receives, the court will

18 decide whether to approve the proposed settlement.  If the proposed

19 settlement is approved, you will receive a claim form and

20 instructions on its submission.  You must submit a claim form to

21 receive any recovery from this settlement.  If the court approves

22 the settlement, but it is not satisfactory to you, you may opt out

23 of the settlement.  In that event, you will receive nothing from

24 this settlement but may bring your own action to obtain a recovery.

25         If the court does not approve the settlement, the

26 litigation will continue, but the lead plaintiff and class counsel

27 may decide to abandon it, in which case class members would receive

28 nothing unless they brought their own lawsuits or a new class

9

action were filed.    Furthermore, if class members holding more than 1.4 million shares opt out of the settlement, Novartis may withdraw from the settlement.