IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CHIRON CORPORATION                    No C 04-4293 VRW
SECURITIES LITIGATION

                                            PROPOSED NOTICE OF
_____ /         PROPOSED SETTLEMENT

To whom it may concern:

     You are receiving this letter because you or an entity in which you have an interest or an entity or person for which you have responsibility may have purchased or otherwise acquired shares of Chiron common stock between July 23, 2003 and October 5, 2004. As such, you may be a member of a proposed class of shareholders in a class action lawsuit currently pending before Chief Judge Vaughn R Walker in the United States District Court for the Northern District of California. The lead plaintiff in the lawsuit, International Union of Operating Engineers Local No. 825 Pension Fund, has agreed to terms of a settlement with the defendants, Novartis Vaccines and Diagnostics, Inc, and certain Chiron executives (Novartis acquired Chiron in 2006).

     The court must determine whether the proposed settlement is fair, and it is seeking your help in doing so. If the court approves the settlement and certifies the proposed class, all class members who do not opt out of the class will be bound by the settlement terms and unable to seek other

recourse against the defendants for the claims alleged in this lawsuit.

Please read the information below and the enclosed notice. If you have any comments about the proposed settlement, please email the court and the parties' counsel at XXXX~~XX@cand.uscourts.gov. Please~~@gilardi.com.   For your comments to be considered, please include your name, the purchase and sale dates of any Chiron stock you acquired between July 23, 2003 and October 5, 2004, and the number of shares you acquired or sold on each date.  This information will confirm that you are a member of the class.

ABOUT THE CASE

Chiron is a California-based pharmaceuticals company focused on developing products for cancer and infectious diseases.  One of its products is a flu vaccine marketed under the name Fluvirin.  Chiron manufactures Fluvirin in a plant near Liverpool, England.

The plaintiffs in this lawsuit allege that on July 23, 2003, Chiron issued a press release reporting strong growth in income and revenues for the second quarter of 2003. Plaintiffs allege that, following the press release, Chiron executives conducted a conference call with analysts favorably representing the Liverpool plant's ability to satisfy the US market for Fluvirin for the 2004-2005 flu season.

On August 26, 2004, Chiron announced that it would delay shipment of Fluvirin pending an investigation after internal testing identified a number of lots with sterility problems.  Chiron announced that the investigation would delay Fluvirin shipments until early October and would prevent the company from recognizing Fluvirin revenue in the third quarter of 2004.  The closing price of Chiron's common stock dropped from $47.49 per share on August 26, 2004 to $43.41 per share on August 27.

On October 5, 2004, Chiron announced that British pharmaceutical regulators had temporarily suspended the company's license to manufacture Fluvirin in the Liverpool plant, preventing the company from releasing any Fluvirin during the 2004-2005 flu season. Chiron's common stock price dropped from $45.42 per share on October 4, 2004 to $37.98 per share on October 5.

1    Plaintiffs allege that Chiron and its executives misled investors by intentionally overstating

2  their ability to manufacture Fluvirin. The lawsuit seeks money damages from the defendants for

3  violations of federal securities laws. ~~The lead plaintiffs estimate~~The lead plaintiff estimates the total

4  losses incurred by purchasers of Chiron common stock between July 23, 2003 and October 5, 2004

5  to be $279.9 million. Defendants deny all liability and deny that there were any damages. The SEC

6  and Congress also investigated the Fluvirin issue, and have taken no action to date.

7    The lead plaintiff and Novartis, which acquired Chiron, agreed to terms of a proposed

8  settlement on March 29, 2007. This settlement was reached at an early stage in the litigation, before

9  substantial formal discovery was conducted into the merits of plaintiffs' allegations. However, Lead

10  Plaintiff's counsel conducted an investigation, which they advised the court included interviews of

11  past and present employees and the review of documents from the U.S. Food and Drug

12  Administration and the U.K's Medicine and Healthcare Products Regulatory Agency obtained

13  through Freedom of Information Act requests. At the time of the settlement, Defendants' motions

14  to dismiss were pending. Accordingly, the case could have been dismissed at the early stage,

15  resulting in no recovery for the class. A copy of the proposed settlement agreement (Doc #100) and

16  the proposed notice to potential class members (Doc #100-3) can be found, along with a complete

17  record of this litigation, at www.XXXXX.com.

18    On November 30, 2007, the court denied preliminary approval of that proposed settlement;

19  the reasons for the denial are set forth in a written order (Doc #130) available at www. XXXXX.

20  com. The parties addressed some of the matters raised in the court's November 30, 2007 order in

21  Lead Plaintiffs' Response to Order of April 14, 2008 re Modified Terms of Settlement and Class

22  Notice (Doc #151), Response of Chiron Defendants to Court's Order Entered April 11, 2008 (Doc

23  #152), and the Supplemental Declaration of Jack DiCanio filed May 21, 2008 (Doc. #162).

24

25  TERMS OF PROPOSED SETTLEMENT

26    The lead plaintiff and Novartis have submitted a new settlement agreement and class notice

27  to the court. The class notice is enclosed, and the settlement agreement is available online as Doc

28  #XX at www.XXXXX.com.

1   Under the proposed settlement, Novartis will pay $30 million plus interest from June 30,

2   2006. Of this amount, 17 percent ($5.1 million) will be paid to lead plaintiff's attorneys and

3   approximately ~~$200~~ $350,000.00 will go toward attorney expenses. Thus, approximately $24.~~75~~

4   million (excluding interest) will be distributed among class members who do not opt out of the

5   settlement. Lead ~~plaintiffs estimate~~plaintiff estimates that the proposed class includes approximately

6   36 million shares of Chiron stock; therefore, the average recovery per share will be approximately

7   $0.~~69~~68. The recovery per share could be higher if all eligible claims are not submitted.

8   The amount actually recovered for each share will depend on when the share was purchased,

9   when, if at all, it was sold, and the purchase and sale prices. The plan of allocation under the

10  proposed settlement is detailed in the enclosed class notice~~at page XX~~.

11  If 1.4 million or more shares opt out of the proposed settlement, Novartis will have the right

12  to elect to terminate the settlement.

13

14  THE COURT'S CONCERNS

15  Although the new proposed settlement and class notice address some of the court's concerns

16  regarding the first proposed settlement and notice, the court has several remaining concerns:

17

18  Quality of the Settlement

19  The $30 million settlement represents 10.7 percent of the $279.9 in losses that lead plaintiff

20  estimates class members suffered during the class period. Lead plaintiff notes that the provable

21  damages in this case might be far less than $279.9 million because the declines in the Chiron stock

22  price following the August 26 and October 5, 2004 disclosures may not be fully attributable to the

23  alleged concealment by Chiron and its executives. It is also true that continuing this litigation may

24  result in no recovery at all.[1] Lead plaintiff argues that a settlement of 10.7 percent of estimated

25  damages compares very favorably to settlements in other securities class actions, noting that in

26  2006, the median settlement in securities class actions was 2.2 percent of estimated losses. See

27  Todd Foster, et al, "Recent Trends in Shareholder Class Action Litigation: Filings Plummet,

[1] See Defendants' motions to dismiss (Doc #57, 60).

28

Settlements Soar," available at www.nera.com.

It is difficult for the court to say whether the lead plaintiff's favorable characterization of the settlement is accurate. Another method of evaluating securities class action settlements compares the amount of the settlement with the one-day drop in the defendant company's market value at the end of the class period. The court estimates that Chiron's market value declined $1.39 billion between October 4 and October 5, 2004. The proposed $30 million settlement represents approximately 2.16 percent of Chiron's one-day market value decline; in 2006, the median securities class action settlement was 3.5 percent of the market value drop in cases where the one-day market value drop was over $500 million, although this statistic included five unusually large settlements in which the market cap decline was in excess of $40 billion. See Laura E Lyons & Ellen M Ryan, "Securities Class Action Settlements: 2006 Review and Analysis," available at www.cornerstone.com. By this measure, the proposed settlement does not compare favorably to the average securities class action settlement in 2006.[2]

The court does not suggest that the latter measure is a more accurate method for evaluating the quality of the proposed settlement. The court merely offers this as an illustration of another way of evaluating the proposed settlement by comparison to published statistics. The court suggested appointing a neutral expert to evaluate the settlement, but the lead plaintiff objected to the expert due to perceived conflicts. See Doc ##145, 146 and 147 at www.XXXXX.com. Consequently, class members are encouraged to make their own evaluation.

Attorney Fees

The court is also concerned that lead plaintiff's attorney fee request may be unreasonably high. Lead plaintiff's counsel request 17 percent of the class recovery, or $5.1 million; this is a reduction from the $7.5 million requested in the first proposed settlement. Although courts often

---

[2]  However, the Private Securities Litigation Reform Act ("PSLRA") governing this action limits the amount of damages awarded by providing that damages "shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Accordingly, the one day market value drop was not available as a bargaining number in settlement.

award attorney fees of 25 percent of the class recovery, it is appropriate to compare the fee request with the amount of work performed by lead plaintiff's attorneys. Lead plaintiff's attorneys spent 2017.5 hours working on this case before the submission to the court of the first proposed settlement. At hourly rates used by the court, lead plaintiff's counsel could bill $718,236.81 for this work. Thus, the requested award of $5.1 million is 7.1 times higher than what lead plaintiff's counsel might reasonably have received had they billed hourly rates for their work.

Lead plaintiff's counsel argues that the court's calculation of reasonable hourly rates is too low. See Doc #151, pages 4-7, at www.XXXXX.com. Using ~~the hourly~~ "Updated" Laffey rates ~~proposed by lead plaintiff's counsel~~ (available at www.laffeymatrix.com), lead plaintiff's counsel could bill approximately $993,969.27 for their work. The requested fees of $5.1 million using this measure would be approximately 5.13 times more than lead plaintiff's counsel would receive if they had billed their time at ~~their proposed~~ the Updated Laffey rate.  In addition, since the submission to the court of the proposed settlement, lead plaintiff's attorneys have incurred approximately XXX more hours on this case, for a total of approximately XXX hours as of the date this notice by the court, and could bill $XXX for this work using the Updated Laffey rates.  Based on the additional hours put into this case by lead plaintiff's attorneys, the requested award of $5.1 million is approximately XXX times lead plaintiff's attorneys' billing rates.  Since the submission to the court of the proposed settlement, lead plaintiff's counsel moved certain items contained in the fee category into the expense category, as called for in the court's opinion regarding the first proposed settlement.  Additional expenses have also been incurred, for a total of $XXX in total claimed expenses as of the date of this notice by the court.

Class counsel are entitled to receive a reasonable fee for any recovery they obtain for the class. You should consider counsel's proposed fee request in deciding whether you wish to accept or object to the settlement.

It is appropriate for lead plaintiff's attorneys – who represent lead plaintiffs on a contingent basis – to receive some multiple of their hourly rate; this compensates them for the risk of no compensation at all when they undertake litigation such as this. It also may be appropriate to increase the multiplier further if the settlement achieved for the class is particularly valuable or the

work performed by lead plaintiff's counsel particularly difficult. Plaintiff's counsel often receive either 25% of the amount recovered for the class, the benchmark fee in this Circuit, or two to four times their ~~reasonably~~ reasonable hourly rates for work on securities class action settlements. A fuller discussion of reasonable attorney fees by the court can be found at Doc #130, pages 9-21, at www. XXXXX. com. Lead plaintiff's attorneys' views regarding reasonable attorneys' fees can be found at Doc #102 and 103, also at www.XXX.com.

~~Novartis~~ Defendants' Counsel's Representation of Attorneys from Lead Plaintiff's Law Firm

It has come to the court's attention that ~~Novartis's~~Defendants' law firm in this litigation, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), employs two attorneys who represented clients in connection with a criminal investigation of employees of the law firm of Milberg, Weiss, Bershad, Hynes & Lerach LLP ("Milberg Weiss") beginning in October 2003. The Milberg Weiss attorneys represented by Skadden left the Milberg Weiss firm in May 2004, when the Milberg Weiss firm split into Lerach, Coughlin, Stoia, Geller, Rudman, Robbins LLP ("Lerach Coughlin") and what became Milberg LLP. The Milberg Weiss attorneys represented by Skadden joined Lerach Coughlin; lead plaintiff is ~~now~~ represented by Milberg LLP. ~~Novartis's~~Defendants' attorneys represent to the court that the two Skadden attorneys who represented the Milberg Weiss employees joined Skadden in January 2006 and that they have not been involved in this litigation in any way. They further represent that the Milberg Weiss employees who were represented by Skadden did not participate in any way in this litigation.

While it does not appear to the court that there is evidence of misconduct between ~~Novartis's~~Defendants' counsel and lead plaintiff's law firm or any other impropriety, the existence of the connection between lead plaintiff's law firm and Skadden may be relevant to your evaluation of the settlement. For a fuller discussion of this issue, including a declaration by the Skadden attorney involved, see Doc #130 at 29-35 ~~and~~, Doc #152, Exh 2 and 3, and Doc #162, at www.XXXXX. com.

HOW TO PROVIDE FEEDBACK

Before deciding whether to approve the proposed settlement, the court wishes to receive

comments from potential class members. The court is particularly interested in your thoughts on whether the settlement itself is fair and whether the requested attorney fees are reasonable.

If you have any comments about the proposed settlement and/or wish to opt out of the settlement, please email the court at XXXXXX@~~cand.uscourts.gov.~~gilardi.com. Please include your name, the purchase and sale dates of any Chiron stock you acquired between July 23, 2003 and October 5, 2004, and the number of shares you acquired. COMMENTS WILL BE ACCEPTED UNTIL THIRTY DAYS AFTER THE DATE OF THIS MAILING.

WHAT HAPPENS NEXT

After reviewing the comments and opt outs it receives, the court will decide whether to approve the proposed settlement. ~~If the proposed settlement is approved~~Along with this notice, you ~~will receive~~are receiving a claim form and instructions on its submission. You must submit a claim form to receive any recovery from this settlement. If the court approves the settlement,~~ but it~~ and you did not opt out, you are bound by the settlement and may not bring your own action. If the settlement is not satisfactory to you, you may opt out of the settlement. In that event, you will receive nothing from this settlement but may bring your own action to obtain a recovery.

If the court does not approve the settlement, the litigation will continue, but it could later be dismissed by the court or the lead plaintiff and class counsel may decide to abandon it, in which case class members would receive nothing unless they brought their own lawsuits or a new class action were filed. A jury could also decide the case in favor of the Defendants. Furthermore, if class members holding more than 1.4 million shares opt out of the settlement, Novartis may withdraw from the settlement.