1   MILBERG LLP
    JEFF S. WESTERMAN (SBN 94559)
2   One California Plaza
    300 S. Grand Ave., Suite 3900
3   Los Angeles, CA  90071-3172
    Telephone: (213) 617-1200
4   Facsimile:  (213) 617-1975
    Email: jwesterman@milberg.com
5
    MILBERG LLP
6   GEORGE A. BAUER III
    ANITA KARTALOPOULOS
7   One Pennsylvania Plaza
    New York, NY  10119
8   Telephone: (212) 594-5300
    Facsimile:  (212) 868-1229
9   Email: gbauer@milberg.com
    Email: akartalopoulos@milberg.com
10

11  Lead Counsel for the Class

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 15  RICHARD GREGORY, On Behalf of Himself ) <br> and All Others Similarly Situated, ) | Case No. C-04-4293-VRW |
| 16                                         ) | CLASS ACTION |
| 17                        Plaintiff,       ) | |
| 18           vs.                           ) | PLAINTIFF'S NOTICE OF MOTION AND <br> MOTION IN SUPPORT OF FINAL <br> APPROVAL OF SETTLEMENT, PLAN OF <br> ALLOCATION AND AWARD OF <br> ATTORNEYS' FEES AND EXPENSES AND |
| 19  CHIRON CORPORATION, HOWARD H.         ) <br> PIEN, JOHN A. LAMBERT and DAVID V.    ) <br> SMITH,                                  ) | IN REPLY TO COMMENTS AND <br> OBJECTIONS FROM CLASS MEMBERS; <br> MEMORANDUM OF POINTS AND |
| 20                                         ) | AUTHORITIES IN SUPPORT THEREOF |
| 21                        Defendants.      ) | |
| 22                                         ) | DATE:      December 3, 2008 <br> TIME:      10:00 a.m. |
| 23                                         ) | CTRM:      6, 17th Floor <br> JUDGE:     Hon. Vaughn R. Walker |
| 24  _____)  | |

25

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...........................................................................x

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.      PRELIMINARY STATEMENT .........................................................................2

      A.      The Settlement ......................................................................................3

      B.      The Notice Process and the Reaction of the Class...............................6

II.     BACKGROUND OF THE LITIGATION...........................................................7

III.    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED....................13

      A.      The Relevant Legal Standards .............................................................13

      B.      Application of this Court's Criteria Strongly Supports Approval of the
Settlement ...........................................................................................14

              1.      The Strength of the Plaintiff's Case...........................................14

              2.      The Risk, Expense, Complexity and Likely Duration of Further
Litigation....................................................................................16

              3.      The Risk of Maintaining Class Action Status Through Trial ...................16

              4.      The Amount Offered in Settlement............................................17

               5.      The Extent of Discovery and Stage of Proceedings...................18

               6.      The Experience and Views of Counsel.......................................19

               7.      The Presence of a Governmental Participant..............................19

               8.      The Reaction of Class Members to the Proposed Settlement ...................20

               9.      The Procedure by Which the Settlement Was Arrived..............................20

               10.    The Role Taken by the Lead Plaintiff in Settlement..................................21

IV.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED........................22

V.     THE REQUESTED ATTORNEYS FEES AND EXPENSES SHOULD BE
FINALLY APPROVED .....................................................................................25

      A.      The Percentage of Fund Method is the Appropriate Method for Awarding
Attorneys' Fees in Common Fund Cases.............................................27

      B.      Plaintiff's Counsel's Reduced 17% Fee Request Should Enjoy a
Presumption of Reasonableness..........................................................29

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- i -

DOCS\444998v1

C.    Consideration of Other Relevant Factors Justifies a Fee Award of 17% in This Case...............................................................................30

1.    The Result Achieved.......................................................30

2.    The Risks of Litigation .................................................31

3.    The Skill Required and the Quality of the Work ........................33

4.    The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiff's Lead Counsel ...................................33

5.    The Awards Made in Similar Cases.....................................35

VI.    PLAINTIFF'S LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .............................................................................36

VII.    THE RESPONSE OF THE CLASS .................................................37

VIII.    CONCLUSION.............................................................................44

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- ii -

DOCS\444998v1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995)......................................................................................39

*In re Activision Sec. Litigation*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................................31

*Arenson v. Board of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................36

*Basic Inc. v. Levinson*,
    485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)........................................20

*Blum v. Stenson*,
    465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)......................................39

*Boeing Co. v. Van Gemert*,
    444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)........................................30

*Bratcher v. Bray-Doyle Independent Sch. District No. 42*,
    8 F.3d 722 (10th Cir. 1993) ...................................................................................39

*In re Broadcom Corporation Securities Litigation*,
    No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12,
    2005) ........................................................................................................................28

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ...............................................................................31

*Camden I Condo. Association v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...............................................................................31

*In re Cendant Corporation Litigation*,
    264 F.3d 201 (3d Cir. 2001)..............................................................................18, 24

*In re Cendant Corporation Securities Litigation.*,
    404 F.3d 173 (3d Cir. 2005)..............................................................................18, 24

*Central R. & Banking Co. v. Pettus*,
    113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885)................................................31

*Central Bank, N.A. v. First Interstate Bank, N.A.*,
    511 U.S. 164, 114 S. Ct. 2439, 128 L. Ed. 2d 119 (1994)....................................34

*Churchill Village L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) .................................................................................35

*City of Burlington v. Dague*,
    505 U.S. 557, 112 S. Ct. 2638, 120 L. Ed. 3d 449 (1992)....................................34

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

\- iii -

DOCS\444998v1

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................................26

*Cohen v. Resolution Trust Corp.*,
    61 F.3d 725 (9th Cir. 1995) .......................................................................................27

*In re Cont'l Ill. Sec. Litigation*,
    962 F.2d 566 (7th Cir. 1992) .....................................................................................31

*In re Convergent Techs. Sec. Litigation*,
    948 F.2d 507 (9th Cir. 1991) .....................................................................................37

*In re Cylink Securities Litigation*,
    274 F. Supp. 2d 1109 (N.D. Cal. 2003) ....................................................................16

*In re DJ Orthopedics, Inc. Sec. Litig.*,
    No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21,
    2004) ....................................................................................................................28, 32

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579, 113 S. Ct.  2786, 125 L. Ed. 3d 469 (1993)........................................34

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)........................................34

*In re Equity Funding Corp. Sec. Litigation*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ..........................................................................36

*In re FVCcom Sec. Litigation*,
    136 F. Supp. 2d 1031 (N.D. Cal. 2000),  ..................................................................35

*In re First Capital Holdings Corp. Finance Products Sec. Litigation*,
    MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ............22

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................................31

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) .....................................................................................37

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) .....................................................................................31

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..............................................................................16, 23

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) .....................................................................................31

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .........................................................................................39

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)............................................33

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- iv -

DOCS\444998v1

*In re Heritage Bond Litig.,*
    MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10,
    2005) ...................................................................................................16, 20, 21, 38

*In re Heritage Bond. Litig.,*
    No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal June 10,
    2005) ...................................................................................................33, 35

*Hughes v. Microsoft Corp.,*
    No. C98 1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wa. Mar. 21, 2001).......................23

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................39

*In re iPass, Inc. Sec. Litigation,*
    No. C-05-00228 *MHP*, 2006 U.S. Dist. LEXIS 63654 (N.D. Cal. Sept. 5, 2006) ...........35

*J.N. Futia Co. v. Phelps Dodge Industrial, Inc.,*
    No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982) .................36

*Kerkorian v. Borelli,*
    695 F. Supp. 446 (N.D. Cal. 1988) ......................................................................16

*In re King Resources Co. Sec Litigation,*
    420 F. Supp. 610 (D. Colo. 1976)........................................................................36

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) ............................................................................31

*Lindy Brothers Builders v. America Radiator & Standard Sanitary Corp.,*
    540 F.2d 102 (3d Cir. 1976)..............................................................................34

*Linney v. Cellular Alaska Partnership,*
    151 F.3d 1234 (9th Cir. 1998) .......................................................................20, 21

*In re Lockheed Martin Corp. Sec. Litigation,*
    272 F. Supp. 2d 944 (C.D. Cal. 2003) .................................................................35

*In re Lucent Techs., Inc. Sec. Litigation,*
    307 F. Supp. 2d 633 (D.N.J. 2004) .....................................................................28

*In re M.D.C. Holdings Sec. Litigation*
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990).........39

*In re Media Vision Tech. Sec. Litigation,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................39

*In re Mego Financial Corp. Sec. Litigation,*
    213 F.3d 454 (9th Cir. 2000) .......................................................................20, 21,
    28, 38

*In re Michael Milken & Associates Sec. Litigation,*
    150 F.R.D. 46 (S.D.N.Y. 1993) .........................................................................19

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- v -

DOCS\444998v1

*Miltland Raleigh-Durham v. Myers,*
        840 F. Supp. 235 (S.D.N.Y. 1993)................................................................39

*National Rural Telecomm. Cooperative v. DIRECTV, Inc.,*
        221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................19, 22,
                                                                                                                23

*Officers for Justice v. Civil Svc. Commission,*
        688 F.2d 615 (9th Cir. 1982), ..............................................................16, 20

*Oracle Sec. Litig.,*
        *No. C-90-0931,* 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) ......................26

*Osher v. JNI  Corp.,*
        308 F. Supp. 2d 1168 (S.D. Cal. 2004)........................................................36

*In re Patriot American Hospitality Inc. Securities Litigation,*
        MDL No. C-00-1300 *VRW,* 2005 U.S. Dist. LEXIS 40993 (N.D. Cal. Nov. 30,
        2005) ...............................................................................................17

*Paul, Johnson, Alston & Hunt v. Graulty,*
        886 F.2d 268 (9th Cir. 1989) .................................................................31, 32,
                                                                                                                37

*Powers v. Eichen,*
        229 F.3d 1249 (9th Cir. 2000) .................................................................32, 37

*In re Read-Rite Corp. Sec. Litigation,*
        335 F.3d 843 (9th Cir. 2003) ...................................................................37

*Six Mexican Workers v. Az. Citrus Growers,*
        904 F.2d 1301 (9th Cir. 1990) .................................................................31, 37

*In re Silicon Storage Tech., Inc. Sec. Litigation,*
        No. C-05-0295 *PJH,* 2007 U.S. Dist. LEXIS 21953 (N.D. Cal. Mar. 9, 2007) ...............35

*In re Skechers U.S.A., Inc. Sec. Litigation,*
        CV 03-02094 PA (Ex), 2004 U.S. Dist. LEXIS 12570 (C.D. Cal. May 10, 2004) ...........36

*In re Skechers U.S.A., Inc. Sec. Litigation,*
        No. 05-55980, 2008 U.S. App. LEXIS 8349 (9th Cir. April 10, 2008)............................37

*Staton v. Boeing Co.,*
        327 F.3d 938 (9th Cir. 2003) ...................................................................16

*Stoneridge Investment Partners, LLC, v. Scientific-Atlanta, Inc.,*
        128 S. Ct. 761, 169 L. Ed. 3d 627 (2008) ...................................................34

*Swedish Hospital Corp. v. Shalala,*
        303 U.S. App. D.C. 94 (D.C. Cir. 1993).....................................................31

*In re Syntex Corp. Sec. Litigation,*
        95 F.3d 922 (9th Cir. 1996) .....................................................................37

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
- vi -

DOCS\444998v1

*Torrisi v. Tucson Electric Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ................................................................16, 31, 32

*Trustees v. Greenough,*
    105 U.S. 527, 26 L. Ed. 1157 (1882) ..................................................30

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ..............................................................16

*Vantive Corp. Sec. Litigation,*
    110 F. Supp. 2d 1209 (N.D. Cal. 2000), ............................................35

*In re Veritas Software Corp. Sec. Litigation,*
    No. C-03-0283 *MMC*, 2005 U.S. Dist. LEXIS 30880
    (N.D. Cal. Nov. 15, 2005) ..................................................................27, 28, 32

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977) ..............................................................30

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ............................................................31, 33

*In re Washington Public Power Supply System Sec. Litigation,*
    19 F.3d 1291 (9th Cir. 1994) ..............................................................30, 34, 36

*In re Washington Public Power Supply System Sec. Litigation,*
    720 F. Supp. 1379 (D. Ariz. 1989) .....................................................22

*Williams v. First National Bank,*
    216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910) ...........................16

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983) ..............................................................22

*In re Worlds of Wonder Sec. Litigation,*
    35 F.3d 1407 (9th Cir. 1994) ..............................................................37

**DOCKETED CASES**

*In re Clarent Corp. Sec. Litigation,*
    No. 01-03361 CRB (JCS) (N.D. Cal Apr. 18, 2005) ..........................19

*Garbini v. Protection One, Inc., et al.,*
    No. 99-3755-DT (RCx) (C.D. Cal. Nov. 4, 2002) ..............................38

*In re Lifescan, Inc. Consumer Litigation,*
    No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) ...................................38

*In re McLeodUSA Inc. Sec. Litigation,*
    No. C02-0001-MWB (N.D. Iowa, Cedar Rapids Division Jan. 5, 2007) ..........................38

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

\- vii -

DOCS\444998v1

*In re Metromedia Fiber Network, Inc. Sec. Litigation*,
    No. 01 Civ. 7353 (CLB) (S.D.N.Y. Dec. 22, 2005) ........................................38

*In re PNC Finance Services Group, Inc. Sec. Litigation*,
    No. 02-CV-271 (W.D. Pa. July 13, 2006) ...........................................38

*Provenz v. Miller*,
    No. C-92-20159-RMW (EAI) (N.D. Cal. Aug. 23, 1999)...............................38

*In re Prudential-Bache Energy Income P'ships Sec. Litigation*,
    MDL No. 888 *E"*, 1994 U.S. Dist. LEXIS 6621 (E.D. La. May 18, 1994)....................37

*Schlagal v. Learning Tree International, Inc.*,
    No. CV-98-6384-GAF (Ex) (C.D. Cal. Aug. 7, 2000) ......................................38

*In re Silicon Graphics, Inc. II Sec. Litigation*,
    No. C-97-4362-SI (N.D. Cal. Jan. 3, 2002) ..........................................38

*In re Spectrian Corp. Sec. Litigation*,
    No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000)......................................38

*In re Sybase Inc. II Sec. Litigation*,
    No. C-98-0252-CAL (N.D. Cal. Sept. 29, 2000)......................................38

*In re Tellium Inc Sec. Litigation*,
    No. 02-CV-5878 (D.N.J. Sept. 7, 2006) ..............................................38

## FEDERAL STATUTES

15 U.S.C. § 78j(b) ..............................................................................10

15 U.S.C. § 78u-4(e)(1) ...................................................................27, 32

15 U.S.C. § 78t(a) ...........................................................................10

17 C.F.R. § 240.10b-5......................................................................10

H.R. Rep. No. 104-369, at 34 (1995)...............................................24

Federal Rules of Civil Procedure 23(b)(3).........................................3

## MISCELLANEOUS

Denise N. Martin et al., *Recent Trends IV - What Explains Filings and Settlements in
    Shareholders Class Actions?*, at 12-13 (NERA Nov. 1996)...........................39

Elaine Buckberg et al., Study of *Recent Trends in Securities Class Action Litigation,
    2003 Early Update*, at 8 (NERA Feb. 2004) .....................................33

Foster et al., *Recent Trends in Shareholder Class Action Litigation: Filings Plummet,
    Settlements  Soar*, at 9 (NERA Jan. 2007) ...............................................7, 33

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- viii -

DOCS\444998v1

1

Laura E. Simmons & Ellen M. Ryan, *Post-Reform Act Securities Settlements, 2005*
    *Review and Analysis*, at 5 (Cornerstone Research 2006)....................................................33

*Newberg on Class Actions* § 11.41 (West 1992) ...........................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- ix -

DOCS\444998v1

1    <u>**NOTICE OF MOTION AND MOTION**</u>

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that pursuant to the June 18, 2008 Preliminary Order for Notice of

4    Hearing in Connection With Settlement Proceedings (Docket No. 171)[1] initially setting the

5    Settlement Fairness Hearing for October 2, 2008, and as ultimately rescheduled to December 3, 2008

6    by an Order dated September 22, 2008 (Docket No. 180), Lead Plaintiff International Union of

7    Operating Engines Local No. 825 Pension Fund ("Lead Plaintiff") will move for an order finally

8    approving the Settlement, Plan of Allocation and Award of Attorneys' Fees in this action, on

9    December 3, 2008 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the Courtroom

10    of the Honorable Vaughn R. Walker, United District Court, 450 Golden Gate Avenue, San

11    Francisco, California 94102.

12    This motion is based, among other things, on the following documents:

- Stipulation and Agreement of Settlement, filed herein on May 4, 2007, Docket No. 100;

- Notice of Motion and Motion for Preliminary Approval of the Proposed Settlement, the Proposed Plan of Allocation, and Attorneys' Fees and Reimbursement of Expenses, filed herein on May 4, 2007, Docket No. 101;

- Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of the Proposed Settlement, the Proposed Plan of Allocation, and Attorneys' Fees and Reimbursement of Expenses, filed herein on May 4, 2007, Docket No. 102;

- Declaration of Jeff S. Westerman in Support of Motion for Preliminary Approval of the Proposed Settlement, the Proposed Plan of Allocation, and Attorneys' Fees and Reimbursement of Expenses, filed herein on May 4, 2007, Docket No. 103;

- Declaration of Christine Medich, dated April 18, 2007 filed herein on May 4, 2007, Docket No. 104;

- Declaration of Jane D. Nettesheim, dated April 20, 2007 filed herein on May 4, 2007, Docket No. 105;

- Supplemental Declaration of Jeff S. Westerman Re: Motion for Preliminary Approval of the Proposed Settlement, the Proposed Plan of Allocation, and

---

[1] "Docket No. __" refers to documents filed in this action, *Gregory v. Novartis Vaccines and Diagnostics, Inc.*, No. 04-cv-04293-VRW (N.D. Cal. Oct. 12, 2004).

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- x -

Attorneys' Fees and Reimbursement of Expenses, filed herein on May 16, 2007, Docket No. 110;

• Plaintiffs' Counsel's Lodestar Report in Connection with Motion for Preliminary Approval, filed herein on August 10, 2007, Docket No. 121;

• Order, filed herein on September 17, 2007, Docket No. 125;

• Defendants' Response to the Court's September 17, 2007 Order, filed herein on September 21, 2007, Docket No. 126;

• Class Counsel's Response to the Court's September 17, 2007 Order, Including Exhibits, filed herein on September 21, 2007, Docket Nos. 127 and 128;

• Order, filed herein on November 30, 2007, Docket No. 130;

• The Transcript of Proceedings in Open Court held on December 20, 2007, Docket No. 139;

• Order, filed herein on December 21, 2007, Docket No. 138;

• Order, filed herein on April 14, 2008, Docket No. 148;

• Lead Plaintiff's Response to Order of April 14, 2008 Re: Modified Terms of Settlement and Class Notice, filed herein on April 18, 2008, Docket No. 51;

• Response of Chiron Defendants to Court's Order Entered April 11 [sic.], 2008, filed herein on April 18, 2008, Docket No. 152;

• Order, filed hereon on April 29, 2008, Docket No. 153;

• Memorandum, filed herein by the Court on May 10, 2008, Docket No. 154;

• Proposed Notice of Proposed Settlement, filed herein by the Court on May 10, 2008, Docket No. 155;

• Transcript of Proceedings Held in Open Court on May 12, 2008, Docket No. 161;

• Supplemental Affidavit of Jack DiCanio, filed herein on May 21, 2008, Docket No. 162;

• Lead Plaintiff's Comments re: Proposed Notice, filed herein on May 21, 2008, Docket No. 163;

• Class Counsel's Report re: Lodestar and Expenses, dated May 27, 2008, Docket No. 164;

• Transcript of Proceedings held in open Court on May 28, 2008, Docket No. 169;

• Request for Entry of Proposed Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings [Pursuant to Status Conference on May 28, 2008], filed herein on June 10, 2008, Docket No. 170;

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- xi -

DOCS\444998v1

- Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings, filed herein on June 17, 2008, Docket No. 171;

- Request to Modify Settlement Notice Due to Recent Events, filed herein on June 18, 2008, Docket No. 172;

- Order, filed herein on June 19, 2008, Docket No. 173;

- Stipulation Regarding Supplemental Post-Card Notice of Settlement Hearing, filed herein on July 14, 2008, Docket No. 174;

- Order, filed herein on July 15, 2008, Docket No. 175;

- Stipulation Regarding Mailing Notices to Recently Identified Participants in Chiron Employee Stock Purchase Plan and Adjourning Date of Settlement Hearing filed herein on September 22, 2008, Docket No. 179; and

- Order, filed herein on September 22, 2008, Docket No. 180.

In addition Lead Plaintiff is submitting herewith the following documents:

- Affidavit of Michael Joaquin of Gilardi & Co. LLC Re: A) Dissemination of Notices Concerning Proposed Settlement, B) Reporting on Requests for Exclusion Received, C) Reporting on Comments and Objections Received, and D) Interim Report on Proofs of Claim Received (the "Joaquin Affidavit"); and

- Declaration of George A. Bauer III Re: Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing (the "Bauer Publication Declaration").

Based on the foregoing documents, and all other prior pleadings and papers filed in this action; and such additional evidence or argument as may be presented at the Hearing, Lead Plaintiff submits that the Court should (a) approve the $30 million Settlement as a fair, reasonable and adequate settlement for the Class's claims, (b) approve the Plan of Allocation, and (c ) approve Class Counsel's request for Attorneys' Fees in the reduced amount of $5.1 million or just 17% of the Settlement Amount, and for reimbursement of $380,717.82 of expenses (*see* Docket No. 164).

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- xii -

DOCS\444998v1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure ("Rule

3 23(b)(3)" or "Rule 23(e)"), Lead Plaintiff, by and through Lead Counsel, Milberg LLP, seeks final

4 approval of the Settlement reached by the parties.

5   Lead Counsel negotiated a settlement of this action on behalf of the Lead Plaintiff and

6 proposed Settlement Class, with defendants Chiron Corporation ("Chiron"), and Individual

7 Defendants Howard H. Pien, John A. Lambert and David V. Smith (collectively "Defendants").

8 Under the terms of the Stipulation and Agreement of Settlement, filed herein on May 4, 2007

9 (Docket No. 100) (the "Stipulation"), Defendants agreed to pay thirty million dollars ($30,000,000),

10 with an amount equivalent to interest thereon from June 6, 2006, in cash (the "Settlement Amount")

11 for the benefit of the Class.  Defendants also agreed to pay the costs of giving Notice to the Class.

12 See Ex. B, Supplement Declaration of Westerman re Motion for Preliminary Approval filed May 16,

13 2007, Docket No. 110.  See The proposed Settlement is an excellent result for the Class because it

14 represents a substantial recovery.  Furthermore, the proposed Settlement is significant in light of the

15 fact that the SEC terminated its investigation of Chiron without enforcement action in connection

16 with potential violations of securities laws; other governmental entities have not taken action against

17 Chiron after announcing investigations; and there was no significant insider trading by Defendants

18 during the alleged Class Period.

19   The litigation against Defendants began in October 2004.  Lead Plaintiff alleged that

20 Defendants violated the federal securities laws by failing to disclose that Chiron was unable to

21 produce Fluvirin, an influenza virus vaccine, for the U.S. market because there were serious good

22 manufacturing practices ("GMP") deficiencies at its Liverpool production plant.  On August 26,

23 2004, when Chiron publicly announced that sterility failures occurred in small batches of Fluvirin,

24 Chiron's stock price dropped.  When Chiron announced on October 5, 2004 that the UK regulatory

25 body, the Medicines and Healthcare Products Regulatory Agency ("MHRA"), suspended the

26 Company's license to manufacture Fluvirin, the Company's stock plummeted further, causing

27 damage to members of the Class.

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

DOCS\444998v1

- 1 -

1    Before entering into settlement discussions, Plaintiff's Lead Counsel investigated the facts

2    and law relating to Lead Plaintiff's claims, including reviewing SEC and publicly available

3    documents about Chiron, analyzing various regulatory reports obtained from the MHRA and the

4    FDA, and interviewing numerous witnesses regarding its claims.  Prior to executing the Settlement

5    Stipulation, Plaintiff's Lead Counsel also reviewed over two thousand pages of internal Chiron

6    documents produced by Defendants and conducted interviews of Howard Pien, Chiron's Chief

7    Executive Officer, and Thomas Lingelbach, the Vice President of Operations for Chiron Vaccines.

8    Plaintiff's Lead Counsel's review of documents and interviews indicated that there were

9    certain weaknesses and litigation risks in the case.  Despite these risks, Plaintiff's Lead Counsel

10   achieved a very substantial monetary recovery that confers an immediate benefit on the Settlement

11   Class and eliminates the risk of continued litigation under circumstances where a favorable outcome

12   was not assured.  Based on the significant results achieved and the risks undertaken, Plaintiff's

13   Counsel seeks final approval of the Settlement and the proposed Plan of Allocation, and an award of

14   attorneys' fees in the amount of 17% of the Settlement Amount in fees, and reimbursement of out-

15   of-pocket expenses in the amount of $380,717.82, plus interest.

16   **I.       PRELIMINARY STATEMENT**

17   Prior to authorizing the giving of notice to the Class herein, the Court reviewed at length the

18   terms of the original proposed Stipulation.  Docket No. 100.  The Court raised, on its own initiative,

19   a number of questions and observations on aspects of the proposed Settlement.  For example, the

20   Court advised the Parties that the opt-out termination trigger amount provided in a separate

21   agreement had to be disclosed.  This amount has now been disclosed in the Notice of Settlement

22   Proposed (the "Cover Notice") from the Court and in the revised Settlement Notice.

23   Over the course of more than a year since the original Stipulation was filed, Plaintiff's and

24   Defendants' Counsel have submitted documents and affidavits addressing other questions the Court

25   raised about, among other things, the Settlement Amount, the Plan of Allocation, the competitive

26   process leading to the selection of the Lead Plaintiff under the Private Securities Litigation Reform

27   Act of 1995 (the "PSLRA"), and the reasonableness of Plaintiff's Counsel's Application for an

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 2 -

1    award of attorneys' fees and reimbursement of expenses, considering the percentage of the fund

2    method and considering lodestar cross-checks and with comparisons to indexes of billing rates and

3    other courts awards.

4           Having previewed these issues with Counsel, the Court implemented some special

5    procedures to provide Class Members with information describing the Court's concerns and inviting

6    Class Members to comment to the Court on any aspect of the Settlement, and providing Class

7    Members with easy and ample opportunities to comment, including by e-mail.  The Court fashioned

8    its own Notice of Proposed Settlement (the "Cover Notice"), to accompany the more traditional

9    Notice of Settlement.  The Cover Notice highlighted "The Court's Concerns" and invited Class

10   Members' "feedback."

11          The overwhelming response of Class Members has been to seek to participate in the

12   Settlement.  The deadline for submitting Proofs of Claim is not until November 1, 2008, and a larger

13   number of additional claims can be expected by that date, but as of October 28, 2008, 5,288 Proofs

14   of Claim have already been submitted seeking a share of the settlement's proceeds.  Joaquin

15   Affidavit ¶ 18.  The original deadline[2] for requesting exclusion from the Class or objecting to the

16   Settlement was August 18, 2008.  In contrast to the large number of Proofs of Claim submitted to

17   date, only seven (7) persons have requested exclusion from the Class, and only six (6) potential

18   Class Members, who in the aggregate say they purchased some 2,515 shares, or less than seven one

19   thousandths (0.007%) of the 36 million shares traded during the Class Period, have indicated any

20   objection to the Settlement.  Joaquin Affidavit ¶¶ 15, 17(b).

21          Clearly the Class Members' overall response favors approval of the Settlement.

22          **A.      The Settlement**

23          On behalf of the Plaintiff Class, Lead Counsel negotiated a settlement of this action (the

24   "Settlement") with Defendants.  Under the terms of the Stipulation (Docket No. 100), Defendants

25   ───────────────────

26   [2]  Class Members who purchased Chiron common stock through the Chiron Employee Stock
     Purchase Plan ("CESPP") were identified and notified late and were given until October 29, 2008 to
27   submit exclusion requests or objections.

28   | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 3 - |
     |---|---|

1   agreed to pay thirty million dollars ($30,000,000) in cash for the benefit of the Class.  Payment will

2   be made, with an amount equal to treasury bill interest from June 6, 2006 to the date of payment,

3   upon this Court's approval of the Settlement becoming final.  An additional benefit to the Class here

4   is that defendant Chiron has agreed to also pay all costs and expenses incurred in connection with

5   disseminating notice of the Settlement to the Settlement Class (Ex. B, Docket No. 110) as directed

6   by the Court (the "Notice Costs").  Docket No. 100, ¶ 4(b).  In exchange for these benefits, Plaintiff

7   and all Class Members will release their "Released Claims" as against Defendants and the "Released

8   Parties," as those terms are defined in the Stipulation at paragraphs 1(s) and (u).

9           The Settlement is worthy of the Court's final approval.  It represents a larger percentage

10  recovery of the Class' estimated damages than obtained in most other settlements of this kind.[3]  The

11  Settlement eliminates the Class' risks of continued litigation, where there is a pending motion to

12  dismiss, and where investigations begun by the Securities and Exchange Commission, the U.S.

13  Congress and other governmental entities have concluded without any other known action being

14  taken against Defendants.  Further, the Settlement is significant in light of the risks of continued

15  litigation, including a ruling on the motion to dismiss that was pending at the time the parties

16  reached the settlement.  Approval of the Settlement will avoid long and costly additional litigation,

17  along with its attendant risks, and will confer an immediate benefit upon the Class.

18          While the Court has questioned whether the quality of the Settlement measured up in view of

19  the "one-day drop in the defendant company's market value at the end of the Class Period" (Cover

20  Notice, Docket No. 171, Ex. 1), it is submitted that the drop in the Company's overall market value

---

22  [3]  As reported in "Recent Trends in Shareholder Class Action Litigation: Filings Plummet,
    Settlements Soar," expected settlement amounts decline as a percentage of investor losses as those
23  losses increase.  *See* Todd Foster et al., Study of *Recent Trends in Shareholder Class Action,
    Litigation: Filings Plummet, Settlements Soar*, chart at 8 (NERA Economic Consulting Jan. 2007),
24  *available at* http://www.nera.com/publication.asp?p_ID=3028.  Where losses are between $200 and
    $300 million, the typical recovery would be less than 5% of the loss.  The recovery here of $30
25  million where estimated losses are $279.9 million is a 10.7% recovery, more than twice the amount
    typically to be expected.  As shown by the chart on page 9, irrespective of the size of the loss, the
26  average recovery as a percentage of the loss has generally been declining since 1996 and ranges
    from 7.2% in 1996 to 2.2% in 2006.  The recovery here is far above the average in any of those
27  years.  *Id.*, chart at 9.

---

1   is virtually unrelated to recoverable damages and does not present a measure of the potential

2   recovery.  The "market value" of the company is based on *all* of its outstanding equity securities.

3   Chiron had approximately 187 million shares issued and outstanding at the end of the Class Period.

4   The price of Chiron common stock dropped $7.44 per share following its corrective disclosure at the

5   end of the Class Period, from $45.42 per share at the close of trading on October 4, 2004 to $37.98

6   per share at the close of trading on October 5, 2004.  Docket No. 171, Ex. 2 at 18 - 19.  While that

7   drop multiplied by 187 million shares yields the $1.39 billion market loss cited by the Court (Docket

8   No. 171, Ex. 1 at 5), only about 36 million of those shares were purchased during the Class Period at

9   allegedly artificially inflated prices and only they have any colorable claim for recovery of damages.

10  Docket No. 171, Ex. 2 at 2.  Some were purchased at prices less than $45.42 and were not

11  "damaged" to the full extent of the price drop.  Plaintiff's damage expert estimated that maximum

12  damages would have been about $279.9 million.  Docket No. 171, Ex, 1, at 4.

13          Because the Class includes only those shares purchased during the Class Period and held at

14  the time of a corrective disclosure, it is not a viable litigation damage approach to attempt to

15  compare Chiron's one day company-wide market value drop for all of its stock, with the recovery for

16  only shares purchased in a limited time period.  Only damaged shares would be entitled to any

17  recovery if the case went to trial.  Losses on shares purchased prior to the Class Period are not

18  recoverable and are irrelevant to the damages that could possibly be recovered.  Different cases will

19  all have different Class Periods, different trading patterns and a different percentage of the

20  Company's outstanding shares will potentially have been damaged.  Comparing different class

21  settlements based on the recovery to the one-day drop in the defendant company's market value is

22  not an approach that would be used to calculate recoverable losses caused by the alleged wrongful

23  conduct.

24          The parties to a litigation negotiate a settlement based on potentially recoverable damages

25  and the risks of litigation.  Losses that are not related to the alleged fraud are not compensable and

26  should not be a consideration in the adequacy of the Settlement.  The comparison of a recovery to a

27  fair estimate of maximum damages is potentially useful, but it must be kept in mind that maximum

28

1    damages are unlikely to be recovered.  Here the comparison of the $30 million recovery against a

2    $279.9 million plaintiff's expert's estimate of maximum damages, yields a 10.7% recovery.

3    Compared to other Settlements in class actions under the federal securities laws, the recovery here is

4    far above the median rate of recoveries as a percentage of losses.  *See* Docket No. 103 ¶ 34; *see also*

5    Foster, *supra* http://www.nera.com/publication.asp?p_ID=3028.  In any event, these different views

6    were included in the Court's Cover Notice.

7    **B.      The Notice Process and the Reaction of the Class**

8            Pursuant to the Court's Preliminary Order for Notice and Hearing in Connection with

9    Settlement Proceedings (Docket No. 171), the Claims Administrator, Gilardi & Co. LLC, under the

10   direction of Lead Counsel, originally distributed over 110,000 sets of the Court's Notice of Proposed

11   Settlement (the "Cover Notice"), the Notice of Pendency of Class Action and Proposed Settlement

12   Thereof, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Settlement Notice") and

13   the Proof of Claim and Release (the "Proof of Claim") (collectively, the "Claim Packet") to potential

14   Class Members, as determined by Chiron's stock transfer records and other appropriate sources.  *See*

15   Joaquin Affidavit, ¶¶ 3- 11.  Pursuant to the Preliminary Order, notice was also published on the

16   national edition of *The Wall Street Journal* on July 9, 2008, and the *Investor's Business Daily* on

17   July 9, 2008.  *See* Bauer Publication Declaration ¶ 2.  The Cover Notice prepared by the Court

18   contained a short description of the case and the terms of the proposed Settlement, and described the

19   "Court's Concerns," inviting Class Members to provide feedback.  The Settlement Notice, which

20   contained all of the disclosures required under the PSLRA and was based on the form of securities

21   class action notice form promulgated by the Federal Judicial Center (*see* "*Class Action Notice Page*"

22   *available at* http://www.fjc.gov (last visited Oct. 29, 2008)) contained a full description of the nature

23   and procedural history of the action, as well as the material terms of the Settlement, the full Plan of

24   Allocation and advised Class Members of the Motion for Approval of Attorneys' Fees (at a rate of

25   17%, reduced from the originally requested 25% benchmark rate prevalent in the Ninth Circuit) and

26   for Reimbursement of Expenses.  The Settlement Notice also provided that any objections to the

27   Settlement, or to Plaintiff's Lead Counsel's request for an award of attorneys' fees of 17% of the

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 6 -

1   Gross Settlement Fund and reimbursement of expenses in the approximate amount of approximately

2   $400,000, plus interest earned on such expenses at the same rate as earned by the Settlement Fund,

3   could be submitted by e-mail or filed by August 18, 2008.[4]

4        As of the date of filing of this Memorandum, only six (6) objections (or comments) to the

5   Settlement, the Plan of Allocation and/or the Award of Attorneys' Fees have been received.  Joaquin

6   Affidavit ¶ 17(b).  Additionally, only seven (7) potential Class members have requested exclusion

7   from the proposed Settlement.  Joaquin Affidavit ¶ 15.  The limited objections and requests for

8   exclusion strongly support the inference that Class members agree the Settlement is fair, reasonable

9   and adequate, especially in view of the Court's Cover Letter and invitation to submit objections by

10  merely sending an e-mail.  On the other hand 5,288 Proof of Claim forms have already been

11  submitted by persons seeking to participate in the Settlement.  Joaquin Affidavit ¶ 18.  Under the

12  procedures worked out at the Court's request, the Court was copied concurrently with counsel on the

13  Class Member e-mail traffic both received and sent in response to the Settlement Notice.

14       In light of the substantial recovery provided by the Settlement, Lead Counsel's informed

15  assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of any

16  substantial opposition to any aspect of the Settlement, and the considerable risks and delays

17  associated with continued litigation and trial, the Settlement is fair, reasonable and adequate and

18  should be approved pursuant to Rule 23(e).

19  **II.      BACKGROUND OF THE LITIGATION**

20       This action was brought on behalf of all persons who purchased or acquired the common

21  stock of Chiron during the period July 23, 2003 and October 5, 2004, inclusive (the "Class Period").

22  The complaint alleges that Chiron and certain of its officers violated Sections 10(b) and 20(a) of the

23  Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange

24  _____

25  [4]      As noted above, a later mailing was made to some 10,000 persons who purchased Chiron
    common stock through the Chiron Employee Stock Purchase Plan due to the late notification of the
26  Claims Administrator by the Plan's administrator.  The deadline for such CESPP participant to
    submit objections or exclusion requests does not expire until October 29, 2008
27

28  | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 7 - |
    | --- | --- |

1  Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, by failing to disclose that Chiron could

2  not sell its influenza virus vaccine, Fluvirin, because its manufacturing plant in Liverpool, England,

3  suffered from serious GMP deficiencies.  On August 26, 2004, when Chiron announced that it would

4  delay shipment of Fluvirin after internal tests identified a "small number of lots" with sterility

5  problems, the Company's stock dropped.  When Chiron announced on October 5, 2004 that British

6  regulators from the MHRA suspended the Company's license to manufacture Fluvirin after

7  determining that the manufacturing process for Fluvirin did not comply with GMP, Chiron's stock

8  price plummeted even further.

9       On May 26, 2005, Defendants filed motions to dismiss the complaint.  On June 8, 2005, Lead

10  Plaintiff filed oppositions.  On June 29, 2005, the Court held a hearing on the Defendants' motions

11  to dismiss.  The Court did not rule on the motions, but instead requested supplemental briefing,

12  which the parties provided.

13       While the motions to dismiss the complaint were pending, the parties began a series of

14  settlement discussions.  The parties engaged in extensive negotiations which occurred over the

15  course of many months.  The parties negotiated at arms'-length and took firm stances each step of

16  the way.  After numerous offers and counter-offers, on or about June 6, 2006, the parties executed

17  the Memorandum of Understanding (and this date started the measure of interest on the $30 million

18  Settlement Amount).  Counsel for the parties spent months thereafter negotiating the precise terms of

19  the Settlement Stipulation.  Many drafts and re-drafts were exchanged before the final terms of the

20  Settlement Stipulation were agreed to by the parties.  The Settlement Stipulation was signed and

21  filed on March 29, 2007.  Docket No. 100.

22       Before entering into the Settlement Stipulation, Lead Counsel conducted an extensive

23  investigation of the alleged wrongdoing by Defendants.  Among  other things, Lead Counsel

24  researched and reviewed the public statements of the Company, including statements made in

25  conference calls and documents filed with the SEC and press releases, regarding the cause of its

26  problems with the production of Fluvirin.  Lead Counsel also obtained and reviewed documents

27  from the FDA, the MHRA and Congressional websites regarding the Fluvirin issue.  Lead Counsel's

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 8 -

1   investigator also interviewed numerous potential witnesses regarding the allegations.  Lead Counsel

2   also consulted with an FDA expert regarding Fluvirin production.  Further, Lead Counsel reviewed

3   over two thousand pages of documents produced by Defendants, and conducted lengthy interviews

4   with defendant Howard Pien (Chiron's CEO, President, and Chairman of the Board) and Thomas

5   Lingelbach (VP, Industrial Operations, of Chiron Vaccines).

6           As a result of all of the foregoing, Plaintiff's Lead Counsel developed an in-depth knowledge

7   of the circumstances surrounding the subject matter of the Class' claims, which allowed Lead

8   Counsel to negotiate for a substantial recovery.  Further, Plaintiff's Lead Counsel has sufficient

9   information concerning the strengths and weaknesses of the case to fully evaluate and recommend

10  fairness of this Settlement to the Plaintiff.

11          On May 4, 2007 Plaintiff moved for preliminary approval of the Settlement.  Docket

12  Nos. 101-106, 110.  On August 2, 2007, the Court held a hearing on the motion for preliminary

13  approval of the Settlement, at which hearing the Court took counsel's arguments under submission

14  and also requested submission of Plaintiff's Counsel's lodestar information.  Docket No. 118.  On

15  September 17, 2007, the Court requested the parties to submit additional information.  Docket

16  No. 125.  The parties provided responses to the Court's requests.  Docket Nos. 126-127, 128.

17          On November 30, 2007, the Court issued a thirty-seven (37) page Order denying preliminary

18  approval of the Settlement and scheduling a Case Management Conference for December 20, 2007.

19  Docket No. 130.  At the Case Management Conference the Court requested further briefing and

20  scheduled another conference for February 14, 2008.  Docket No. 137.  Following the December 20

21  conference the Court entered an Order (Docket No. 138) concerning the competiveness of the

22  selection of the Lead Plaintiff under the PSLRA and inviting the parties to comment on the Court's

23  understanding.[5]

24  _____

25  [5]  The selection of lead counsel was competitive in the sense that a PSLRA Notice was published
    and one other competitive movant filed for appointment as lead plaintiff.  That movant later
26  withdrew, apparently because of the disparity in the financial loss between the two competing
    movants, and the PSLRA presumption in favor of the movant with the largest loss.
27

28  | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 9 - |
    | --- | --- |

1    At the February 14, 2008 conference the Court suggested the possibility of retaining

2 Professor Michael Perino to evaluate the proposed Settlement and help devise a class notice, and

3 requested comments from the parities by March 17, 2008.  Docket Nos. 144, 145.  Defendant

4 consented (Docket No. 146), but Lead Plaintiff objected (Docket No. 147) and requested a further

5 conference.

6    By Order dated April 14, 2008, the Court suggested "sending the proposed class a short

7 notice designed to elicit responses from the class members.  The notice should summarize briefly the

8 proposed settlement, explain the Court's concerns about the proposed settlement, and encourage

9 potential class members to respond with their views."  Docket No. 148.  The April 14, 2008 Order

10 also directed the parties to submit any modified terms of the Stipulation by April 18, 2008.  *Id.*  Lead

11 Plaintiff and Defendants each submitted responses on April 18, 2008.  Both sides stated that the

12 Stipulation would be modified to disclose the number of shares purchased by Class Members and

13 held at the end of the Class Period that would allow Defendants to terminate the Stipulation in the

14 event that Class Members holding such number of shares requested exclusion from the Class.  In

15 addition, although not a condition of the Stipulation, Lead Plaintiff and Lead Counsel advised the

16 Court that they would reduce the request for Attorneys fees from 25% to 17%.  Plaintiff's

17 submission also requested a conference and suggested a number of subjects to be discussed

18 concerning the issuance, comprehensiveness and costs of the Class notice, the potential responses to

19 the Class notice and standing to object, and information that could be made available on a website.

20 Lead Plaintiff's submission also responded to issues raised by the Court that were not the subject of

21 briefing or raised at the hearing on the motion for preliminary approval, including the number of

22 cases involving the Lead Plaintiff, and the "Laffey Matrix."  Defendants' submission also responded

23 to issues raised by the Court that were not the subject to briefing or raised at the hearing on the

24 motion for preliminary approval concerning its counsel's representation of certain individuals who

25 were at one time lawyers with the firm that is Plaintiff's Lead Counsel.

26    The Court thereafter scheduled a conference for May 12, 2008.  Docket No. 153.  By Order

27 dated May 10, 2008, the Court advised the parties that it was contemplating sending Class Members

28

1    "a short notice from the Court seeking their comment whether the Court should approve the

2    proposed settlement" to be sent along with the more detailed notice drafted by the parties.  Docket

3    No. 154.  The May 10, 2008 Order provides "[i]n this case, the court does not envision the usual

4    two-step process: a 'preliminary' approval followed by final approval.  Instead the court seeks to

5    have the parties put before the class the terms of the settlement on a take-it or leave-it basis with one

6    notice."  The Court also sought suggestions from the Office of Collection and Distributions of the

7    Securities & Exchange Commission.[6]  Also filed at the time of the May 10 Order was a proposed

8    form of the Court's Proposed Notice of Proposed Settlement (Docket No. 155), that ultimately

9    became the "Cover Notice" (Docket No. 171, Ex. 1), which contained a brief description of the case,

10    the terms of the settlement, and the Court's "concerns" about the "quality of the settlement," the

11    "Attorney Fees" and "Novartis Counsel's Representation of Attorneys from Lead Plaintiff's Law

12    Firm," and provided for e-mail submission of "feedback."  At the May 12, 2008 conference, the

13    parties gave the Court some initial responses concerning the Court's Cover Notice and explored the

14    proposed notice mechanics, establishing a website for class members to have access at no cost to

15    relevant documents from the case docket, and the proposed e-mail feedback provisions.  Further

16    submissions were ordered for May 21, 2008 and a further conference was scheduled for May 28,

17    2008.  *See* Transcript of Proceedings held on May 12, 2008, Docket No. 161.

18          On May 21, 2008, Defendants submitted the Supplemental Declaration of Jack P. DiCaino in

19    response to questions Judge Walker asked about Novartis Counsel's Representation of Attorneys

20    from Lead Plaintiff's Law Firm.  Docket No. 162.

21          On May 21, 2008 Plaintiff filed Lead Plaintiff's Comments re Proposed Class Notice and

22    Class Counsel's Report re Lodestar and Expenses.  Docket Nos. 163-164.

23          At the May 28, 2008 conference, the Court indicated that it accepted most of the comments,

24    additions or amendments suggested for the proposed notice and noted that the parties had "addressed

25    _____

26    [6]  Although the Court sent a letter to this SEC Office no response has been filed.  Docket Nos. 157-
     160.

27

28    | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 11 - |
     | --- | --- |

     DOCS\444998v1

1   and corrected some of the matters raised in the Court's November 30, 2007 Order."  Transcript of

2   Proceedings held on May 28, 2008 at 4, Docket No. 169.  The parties agreed to submit conformed

3   versions of the notice documents, together with Red-Lined versions, and an Order directing the

4   giving of the notices and scheduling a hearing to consider whether the Settlement should be finally

5   approved.  *Id.*

6        On June 10, 2008 Lead Plaintiff submitted a Request for Entry of Proposed Preliminary

7   Order For Notice and Hearing In Connection With Settlement Proceedings [Pursuant to Status

8   Conference on May 28, 2008].  Docket No. 170.  On June 18, 2008, the Court entered the

9   Preliminary Order For Notice and Hearing In Connection With Settlement Proceedings, directing the

10  mailing and publication of the notices and scheduling a hearing to consider final approval of the

11  Settlement for October 2, 2008 and setting an August 18, 2008 deadline for submission of requests

12  for exclusion and objections or comments to the Settlement, Plan of Allocation and/or the motion for

13  an award of Attorneys' Fees and reimbursement of expenses.  Docket No. 171.

14       On June 18, 2008, Lead Plaintiff submitted a Request to Modify Settlement Notice Due to

15  Recent Events.  Docket No. 172.  By Order dated June 19, 2008, the Court granted in part and

16  denied in part the Lead Plaintiff's modification and directed the notice to be modified as directed by

17  the Court, which was done.  Docket No. 173.

18       At the Court's direction, the date of the hearing on the Settlement was re-scheduled for

19  October 6, 2008.  The parties thereupon entered a Stipulation Regarding Supplemental Post-Card

20  Notice Regarding Change of Date of Settlement Hearing, which the Court Ordered on July 15, 2008.

21  Docket Nos. 174, 175.

22       On or about September 16, 2008, the Claims Administrator first received a new list of some

23  10,000 names and addresses of potential Class Members who were participants in Chiron's

24  Employee Stock Purchase Plan, who had not been included in the original mailing.  On September

25  18, 2008, the parties filed a Stipulation Regarding Mailing Notices to Recently Identified

26  Participants In Chiron Employee Stock Purchase Plan and Adjourning Deadlines and Date of

27  Settlement Hearing.  Docket No. 179.  By Order dated September 22, 2008, the Court re-scheduled

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 12 -

DOCS\444998v1

1    the hearing on the Settlement for December 3, 2008 and allowed participants in the CESPP to submit

2    objections and exclusion requests no later than October 29, 2008.  Docket No. 180.

3    **III.    <u>FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED</u>**

4          The law favors the compromise of disputed claims.  *Williams v. First Nat'l Bank*, 216 U.S.

5    582, 30 S. Ct. 441, 54 L. Ed 625 (1910).  "[T]here is an overriding public interest in settling and

6    quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco*

7    *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

8          Under Rule 23(e), courts are required to review a class action settlement agreement to

9    determine whether it is "fundamentally fair, adequate and reasonable."  *Hanlon v. Chrysler Corp.*,

10   150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *In re Cylink Secs. Litig.*, 274 F. Supp. 2d

11   1109, 1112 (N.D. Cal. 2003).  A strong initial presumption of fairness attaches to the proposed

12   settlement if the settlement is reached by experienced counsel after arms'-length negotiations and is

13   recommended by informed counsel.  *In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2005

14   U.S. Dist. LEXIS 13555, at *11 (C.D. Cal. June 10, 2005); *see also Kerkorian v. Borelli*, 695 F.

15   Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel entitled to considerable weight).

16   The initial presumption of fairness applies to the Settlement because it was reached by experienced,

17   informed counsel after conducting an extensive litigation and following months of negotiations.  The

18   Settlement should be finally approved.

19         **A.    The Relevant Legal Standards**

20         The standard for reviewing the proposed settlement of a class action is whether it is "fair,

21   reasonable and adequate."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *Officers for*

22   *Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 75 L.

23   Ed. 2d 456, 103 S. Ct. 1219 (1983).  According to the Ninth Circuit:

24         The district court's ultimate determination [of whether to approve the settlement]
           will necessarily involve a balancing of several factors which may include, among
25         others, some or all of the following:  the strength of plaintiffs' case; the risk, expense,
           complexity, and likely duration of further litigation; the risk of maintaining class
26         action status throughout the trial; the amount offered in settlement; the extent of
           discovery completed, and the stage of the proceedings; the experience and views of
27         counsel; the presence of a governmental participant; and the reaction of the class
           members to the proposed settlement.

28   | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 13 - |
     |---|---|

1   *Id.; accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

2   In *In re Patriot American Hospitality Inc. Securities Litigation*, MDL No. C-00-1300 VRW,

3   2005 U.S. Dist. LEXIS 40993 (N.D. Cal. Nov. 30, 2005), this Court also identified ten factors for

4   determining the fairness of the settlement:

5   
    (1)   the strength of the plaintiffs' case;
    (2)   the risk, expense, complexity, and likely duration of further litigation;
6   (3)   the risk of maintaining class action status throughout trial;
    (4)   the amount offered in settlement [presumably in relation to maximum
7         potential recovery or in comparison to comparable cases];
    (5)   the extent of discovery completed and the stage of the proceedings;
8   (6)   the experience and views of counsel;
    (7)   the presence of a governmental participant; …
9   (8)   the reaction of class members to the proposed settlement; [ ]…
    (9)   the procedure by which the settlements were arrived at[;]… and
10  (10)  the role taken by the lead plaintiff in that process.

11  *Id* at *4 (citations omitted).

12   Balancing the factors under either standard, the proposed Settlement is fair, reasonable and

13  adequate, and should be finally approved.

14
15  **B.    Application of this Court's Criteria Strongly Supports Approval of the
            Settlement**

16           **1.    The Strength of the Plaintiff's Case**

17   Lead Plaintiff bears the burden of establishing each of the elements of the claims against

18  Defendants.  Although Lead Counsel believes that the statements and omissions at issue were

19  materially false and misleading, Lead Plaintiff's ability to meet the requisite "strong inference of

20  scienter" pursuant to the PSLRA at the pleading stage, and its ability to meet the burden of proof at

21  trial and appeals, is uncertain.

22   The strength of Lead Plaintiff's case was immediately subjected to test by Defendants'

23  motions to dismiss.  On May 26, 2005 Defendant Chiron filed its Motion to Dismiss.  Docket

24  No. 60.  On that same date, the Individual Defendants separately filed a Motion to Dismiss

25  incorporating the Chiron Motion arguments and adding separate arguments applicable to them.

26  Docket No. 57.  In Defendants' motions to dismiss, Defendants asserted that the complaint failed to

27  meet the stringent pleading requirements of the PSLRA.  In particular, Defendants argued that:  (i)

28

1   there was no significant insider trading; (ii) there was no strong motive to defraud; (iii) Plaintiff did

2   not adequately plead a strong inference of scienter; (iv) the complaint was an improper puzzle-

3   pleading; (v) Defendants' statements were forward-looking statements protected by the PSLRA's

4   safe harbor provision; (vi) there was no loss causation; and (vii) group pleading did not apply and

5   Plaintiff failed to attribute statements to each Individual Defendant.  On June 8, 2005, Lead Plaintiff

6   submitted its opposition papers marshaling its evidence and arguments supporting the complaint as

7   against both motions.  Docket Nos. 69, 70.  Reply papers were filed on June 15, 2005 by Chiron

8   (Docket No. 72) and the Individual Defendants (Docket No. 73).  On June 29, 2005, the Court heard

9   argument on the motions and directed additional briefing on a number of issues.  Docket Nos. 82, 83.

10  Lead Plaintiff submitted its brief in further support of its opposition to the motions on July 29, 2005.

11  Docket No. 84.  Defendants submitted their response on August 19, 2005.  Docket No. 90.  The

12  Court did not immediately grant or deny the Defendants' motions, which the parties interpreted as

13  suggesting that neither side's case overwhelmed the Court, and thus that both sides arguments have

14  some weight, but that Lead Plaintiff, which bears the burden of proof, at a minimum faced

15  significant risk.

16         Although the parties settled before the Court issued an order on Defendants' motions to

17  dismiss, based on the foregoing, Plaintiff's Lead Counsel anticipate that Defendants would have

18  mounted a strong attack on Plaintiff's ability to prove scienter during the ongoing litigation and upon

19  summary judgment.   Additionally, prior to executing the Stipulation of Settlement, Plaintiff

20  interviewed Chiron's CEO and the VP of Operations of Chiron Vaccines.  These interviews

21  confirmed that *scienter* presented some challenges not previously known.  *See* Exhibit A,

22  Declaration of Jeff S. Westerman in Support of Motion for Preliminary Approval filed May 4, 2007

23  ("Westerman Decl.") ¶ 21, Docket No. 103.

24         The strength of the case factor supports settlement here.  The strength is not so overwhelming

25  as to have caused the Court to immediately deny Defendants motions to dismiss, but is strong

26  enough to have caused the Defendants to offer a substantial settlement fund.

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 15 -

DOCS\444998v1

1

2

### 2.     The Risk, Expense, Complexity and Likely Duration of Further Litigation

3      "[I]n most situations, unless the settlement is clearly inadequate, its acceptance and approval

4  are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*

5  *Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, the risk, expense, complexity

6  and likely duration of the litigation fully supports the Settlement. As set forth above, Plaintiffs faced

7  risks of dismissal at the pleading stage and in proving liability and damage at trial. Also, because it

8  would be necessary to undertake full document and deposition discovery, expert discovery, and

9  dispositive motion practice at the conclusion of discovery, this case could easily require an

10  additional two-three years to reach a conclusion. Additionally, due to the inherent risky nature of

11  trials in general, it is impossible to predict how a trier of fact will construe the evidence and

12  testimony. *See e.g.*, *In re Clarent Corp. Sec. Litig.*, No. 01-03361 CRB (JCS), slip op. at 2 (N.D.

13  Cal. Apr. 18, 2005) (defense verdict following trial). Furthermore, even a winning jury verdict "is

14  not a guarantee of ultimate success." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53

15  (S.D.N.Y. 1993) (noting reversal of multimillion judgment in *Berkey Photo, Inc. v. Eastman Kodak*

16  *Co.*, 457 F. Supp. 404 (S.D.N.Y. 1978)), *aff'd in part, rev'd in part,* 603 F.2d 263 (2d Cir. 1979).

17  Given the size of the case, the losing party would undoubtedly appeal any adverse ruling. In light of

18  the risks and uncertainties inherent in litigation, a settlement now for $30 million benefits, and is in

19  the best interests of, the Class.

20      The "Risk, Expense, Complexity and Likely Duration of Further Litigation" factor supports

21  approval of the proposed Settlement.

### 3.     The Risk of Maintaining Class Action Status Through Trial

23      If the motions to dismiss were denied, Lead Counsel believes the proposed Class would

24  likely be certified. The elements required for class certification are all present here. Numerosity is

25  not an issue in a case dealing with nationally traded securities. The notice program has indicated

26  that there are at least tens of thousands of potential members of the Class. Commonality is also not

27  an issue because there are questions or law or fact common to the Class; for example, all members of

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 16 -

DOCS\444998v1

1   the Class have an interest in proving that Defendants made misrepresentations during the Class

2   Period.  Issues regarding typicality and adequacy, which focus on whether Lead Plaintiff as the

3   proposed Class Representative is typical and adequate to represent members of the Class, may have

4   been tested by Defendants, as illustrated by questions the Court raised in its Order denying

5   preliminary approval of the Settlement (Docket No. 130), but Lead Counsel submit that Lead

6   Plaintiff is typical and adequate and that the responses and evidence submitted fully answers all

7   questions in this regard.  Further, it is likely that if the complaint were upheld but Lead Plaintiff or

8   counsel were not found typical and adequate that other representatives would be substituted.  In

9   addition, individual reliance is presumed in securities class actions because, under the fraud-on-the-

10  market theory, the information or misrepresentation fed to the market is reflected in the stock price,

11  and misleading statements will therefore defraud purchasers of stock even if the purchasers do not

12  directly rely on the misstatements.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 242, 108 S. Ct. 978, 99

13  L. Ed. 2d 194 (1988).  Because the requirements for class certification will generally be met in a

14  securities class action, the risk of maintaining this action as a class action is not a major factor in

15  support of or against the Settlement.

16                    **4.       The Amount Offered in Settlement**

17         After extended negotiations Defendants ultimately offered $30 million, a substantial amount,

18  to settle this Action.  The adequacy of this amount must be judged as "a yielding of absolutes ….

19  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of

20  cost and elimination of risk, the parties each give up something they might have won had they

21  proceeded with litigation …."  *Officers for Justice*, 688 F.2d at 624 (citation omitted).

22         "'It is well-settled law that a cash settlement amounting to only a fraction of the potential

23  recovery does not per se render the settlement inadequate or unfair.'"  *In re Mego Fin. Corp. Sec.*

24  *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), amended, 2000 .  The settlement is not to be judged against

25  a speculative measure of what might have been achieved.  *Linney v. Cellular Alaska P'ship*, 151

26  F.3d 1234, 1242 (9th Cir. 1998).  Additionally, the Court should consider that the Settlement

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 17 -

1  provides for payment to the Class **now**, instead of speculative payment years later.  *See In re*

2  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *28.

3       As indicated above, $30 million represents about 10.7% of the $279.9 million plaintiff's

4  expert's estimate of maximum damages.  As shown by published studies of securities class action

5  settlements, this is a larger percentage recovery of the Class' estimated damages than obtained in

6  most other settlements of this kind.  The average recovery as a percentage of the loss has generally

7  been declining since 1996 and ranges from 7.2% in 1996 to 2.2% in 2006, so this 10.7% recovery is

8  indeed quite good.  The Settlement eliminates the Class' risks of continued litigation, where there is

9  a pending motion to dismiss, and where investigations begun by the Securities and Exchange

10 Commission, Congress and other governmental agencies have concluded without any other action

11 being taken against the company.

12      Measured as against the potential maximum damages in this case, the proposed Settlement is

13 better than obtained in most other cases of its nature.  This factor strongly supports final approval of

14 the Settlement.

15           **5.    The Extent of Discovery and Stage of Proceedings**

16      Although formal discovery was not conducted in this case, "'in the context of class action

17 settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties

18 have sufficient information to make an informed decision about settlement.'"  *In re Mego Fin.*, 213

19 F.3d at 459, citing *Linney v. Cellular Alaska Partnership*, 151 F.3d at 1238.  Here, Lead Counsel's

20 knowledge of the factual and legal support for this case are more than adequate to support the

21 settlement.  *See Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *31-32.

22      Prior to executing the Settlement Stipulation, Lead Counsel reviewed publicly available

23 documents, internal Chiron documents, documents obtained through Freedom of Information Act

24 requests and numerous documents made public from investigations from U.S. and U.K. regulators,

25 interviewed numerous witnesses, and interviewed Chiron's CEO and the VP of Operations for

26 Chiron Vaccines.  As a result, Plaintiff's Lead Counsel and Lead Plaintiff had sufficient information

27 to evaluate the strengths and weaknesses of the claims and defenses, and the likelihood of obtaining

28

1   a larger recovery from Defendants if the litigation continued.   Accordingly, this factor favors

2   approval of the Settlement.

3        The stage of these proceedings and the amount of discovery and investigation obtained is

4   more than adequate to support final approval of the proposed Settlement

5           **6.**      **The Experience and Views of Counsel**

6        "Great weight is accorded to the recommendation of counsel, who are most closely

7   acquainted with the facts of the underlying litigation.   This is because parties represented by

8   competent counsel are better positioned than courts to produce a settlement that fairly reflects each

9   party's expected outcome in the litigation.   Thus, the trial judge, absent fraud, collusion, or the like,

10  should be hesitant to substitute its own judgment for that of counsel."   *Nat'l Rural Telecomm. Coop.*

11  *v. DIRECTV*, 221 F.R.D. at 528 (citations omitted); *see also In re First Capital Holdings Corp. Fin.*

12  *Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10,

13  1992) (belief of counsel that the proposed settlement is a most beneficial result for the class is a

14  compelling factor in approving settlement); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.

15  Supp. 1379, 1392 (D. Ariz. 1989), *aff'd* 955 F.2d 1268 (9th Cir. 1992).

16       Plaintiff's Lead Counsel, Milberg LLP, and Defendants' counsel, Skadden, Arps, Slate,

17  Meagher, & Flom, LLP and Wachtell, Lipton, Rosen & Katz, are extremely knowledgeable of the

18  facts underlying the allegations in the complaint and the arguments that could be made both in

19  support of and in defense of the claims.   The fact that these highly experienced counsel believe this

20  Settlement should be approved should be afforded great weight.   *See Williams v. Vukovich*, 720 F.2d

21  909, 922-23 (6th Cir. 1983) (courts should defer to judgment of experienced counsel).   Accordingly,

22  this factor strongly favors approval of the Settlement.

23          **7.**      **The Presence of a Governmental Participant**

24       Although there were investigations begun by the Securities and Exchange Commission, the

25  U.S. Congress, and other governmental agencies, we understand that they concluded without any

26  other action being taken against any of the Defendants.   Accordingly Lead Plaintiff was required to

27  undertake the full burden of proving a case against Defendants on its own and did not and could not

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

    - 19 -

1  "ride the coattails" of any Governmental participant to make its case for the Class.  Lead Plaintiff did

2  however obtain and review documents from the FDA, the MHRA and Congressional websites

3  regarding the Fluvirin issue.  The lack of a governmental finding of wrongdoing following highly

4  publicized and high profile investigations, demonstrates the real risks Lead Plaintiff faced to obtain a

5  recovery from Defendants, and to that extent this factor supports approval of the Settlement.

**8.      The Reaction of Class Members to the Proposed Settlement**

7          The reaction of the Class to the Settlement is a significant factor in assessing its fairness and

8  adequacy.  *See Hughes v. Microsoft Corp.*, No. C98 1646C, 2001 U.S. Dist. LEXIS 5976, at *24

9  (W.D. Wa. Mar. 21, 2001) (9 objections and exclusions by only 1% of class indicated class approval

10 and supported settlement).  "[I]t is established that the absence of a large number of objections to a

11 proposed class action settlement raises a strong presumption that the terms of a proposed class

12 settlement action are favorable to the class members."  *Nat'l Rural Telecomm. Coop. v. DIRECTV*,

13 221 F.R.D. at 529.

14         Here, the overwhelming response of Class Members has been to seek to participate in the

15 Settlement.   Over 5,200 Proofs of Claim have already been submitted to participate in the

16 Settlement.  *See*  Joaquin Affidavit ¶ 18.  In contrast to the large number of Proofs of Claim

17 submitted to date, only seven (7) persons have requested exclusion from the Class.  *See* Joaquin

18 Affidavit ¶ 15, and only six (6) potential Class Members have indicated any objection to the

19 Settlement.  *See*  Joaquin Affidavit ¶ 17(b).

20         Clearly the Class Members' overall response strongly favors approval of the Settlement.

**9.      The Procedure by Which the Settlement Was Arrived**

22         When a proposed settlement is the result of non-collusive, arms'-length negotiations, there is

23 a presumption that the proposed settlement is fair and reasonable.  *Newberg on Class Actions*

24 § 11.41 at 11-88 (West 1992).   The proposed Settlement here was achieved after lengthy

25 negotiations between Plaintiff's Lead Counsel and Defendants' counsel.  Furthermore, after an

26 agreement in principle was reached by the parties, it took many more months before the parties

27 executed the Stipulation of Settlement.  *See Hanlon,* 150 F.3d at 1027 (negotiations lasting several

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 20 -

1  months supported findings that negotiations were arms'-length).  There is no evidence or suggestion

2  that fraud or collusion played any role in achieving the settlement.  This factor also supports

3  approval.

4       **10.**       **The Role Taken by the Lead Plaintiff in Settlement**

5         Lead Plaintiff, International Union of Operating Engines Local No. 825 Pension Fund, is an

6  institutional investor managing a large pension fund with experience in securities class action

7  litigation.  Lead Plaintiff was actively involved in the litigation and in negotiating and approving the

8  proposed Settlement.  *See* Exhibit A, Westerman Decl., ¶ 6, Docket No. 103; Declaration of

9  Christine Medich filed May 4, 2007, Docket No. 104.

10         When Congress enacted the PSLRA, it envisioned that institutional investors like Lead

11  Plaintiff here would be in a position to select counsel, maintain the ongoing litigation, and assess the

12  reasonableness of the attorneys' fee request.  *See* H.R. Rep. No. 104-369, at 34 (1995), *reprinted in*

13  1995 U.S.C.C.A.N. 730, 733 ("most adequate plaintiff' provision intended to "increase the

14  likelihood that institutional investors will serve as lead plaintiffs").  Thus, in *In re Cendant*

15  *Corporation Litigation,* 264 F.3d 201 (3d Cir. 2001) ("Cendant I") and *In re Cendant Corporation*

16  *Securities Litigation.,* 404 F.3d 173 (3d Cir. 2005) ("Cendant II"), the Third Circuit, looking to

17  legislative history of the PSLRA, concluded that there is a presumption of reasonableness to a fee

18  request that has the support of a duly-selected lead plaintiff, as the PSLRA "significantly altered the

19  landscape of attorneys' fee awards in securities class actions" and the current paradigm "necessarily

20  entails deferring to the lead plaintiff in decisions about lead counsel's compensation."  *Cendant II,* at

21  180.

22         Lead Plaintiff's active involvement with the litigation and settlement should weigh heavily in

23  favor of granting final approval.

24                                 \*   \*   \*

25         The foregoing clearly demonstrate that the proposed settlement should be approved.

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 21 -

DOCS\444998v1

1  **IV.      THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED**

2      The Stipulation of Settlement provides that the $30 million settlement amount and the

3  interest earned thereon, less all taxes, approved costs, fees and expenses, shall be allocated among all

4  Authorized Claimants in accordance with a Plan of Allocation approved by the Court.  The proposed

5  Plan of Allocation, which is set forth in the Settlement Notice mailed to all Class Members (Docket

6  No. 171, Ex. 2) reflects the facts regarding the artificial inflation caused by the alleged

7  misrepresentations and omissions made during the Class Period and the subsequent decline in

8  Chiron's stock price immediately following the corrective disclosures made on August 26 and

9  October 4, 2004.  The Plan of Allocation was a subject of focus by the Court at the Preliminary

10  Approval Hearing on August 2, 2007.  The Court subsequently denied the preliminary approval

11  motion, as discussed above, but the Plan of Allocation was not a matter about which the Court

12  expressed any reservations.

13      In reaction to Chiron's disclosures made on August 26, 2004 after the close of trading,

14  Chiron's stock price dropped from $47.49 per share on August 26, 2004 to $43.41 per share on

15  August 27, 2004 – a $4.08 drop.  In reaction to Defendants' post trading close disclosures on

16  October 4, 2004, the price of Chiron common stock plummeted, from a closing price of $45.42 per

17  share on October 4, 2004 to a closing price of $37.98 per share on October 5, 2004 – a $7.44 drop.

18  Declaration of Jane D. Nettesheim, filed May 4, 2007 ("Nettesheim Decl.") ¶ 7, Docket No. 105.

19  The total of these drops (from $47.49 per share on August 26, 2004 to $37.98 per share on October

20  5, 2004), or $9.51, is the maximum loss that will be recognized for purposes of the Settlement.

21  Nettesheim Decl. ¶ 8, Docket No. 105 .

22      The proposed Plan of Allocation provides that "Recognized Claims" will be calculated for

23  purposes of the Settlement as follows:

24      (a)      For shares of Chiron common stock purchased during the period July 23, 2003

25  and August 26, 2004, inclusive, and

26      (i)      Sold on or before August 26, 2004, an Authorized Claimant shall have

27  no ($0.00) "Recognized Claim";

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 22 -

1          (ii)      Sold at a loss during the period August 27, 2004 through and including

2    October 4, 2004 an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $4.08

3    per share, or (b) the purchase price paid (including commissions, etc.) (the "PPP") less the sales

4    proceeds received (net of commissions, etc.) (the "SPR");

5          (iii)      Sold at a loss on October 5, 2004 an Authorized Claimant's

6    "Recognized Claim" shall mean the lesser of: (a) $9.51 per share, or (b) the PPP less the SPR.

7          (iv)      Held as of the close of trading on October 5, 2004 an Authorized

8    Claimant's "Recognized Claim" shall mean the lesser of: (a) $9.51 per share, or (b) the PPP less

9    $37.98 per share.

10         (b)      For shares of Chiron common stock purchased during the period August 27,

11   2004, through and including October 4, 2004, and

12         (i)      Sold on or before October 4, 2004 an Authorized Claimant shall have

13   no ($0.00) "Recognized Claim;"

14         (ii)      Sold at a loss on October 5, 2004 an Authorized Claimant's

15   "Recognized Claim" shall mean the lesser of: (a) $7.44 per share, or (b) the PPP less the SPR.

16         (c)      Held as of the close of trading on October 5, 2004 an Authorized Claimant's

17   "Recognized Claim" shall mean the lesser of: (a) $7.44 per share, or (b) the PPP less $37.98 per

18   share.

19         The proposed Plan of Allocation therefore reflects the complaint's allegations that the

20   decreases in the price of Chiron common stock occurring upon the revelations made by Chiron on

21   August 26, 2004 and October 5, 2004 reflected the elimination of the artificial inflation that

22   Defendants alleged misrepresentations during the Class Period may have caused.

23         Approval of a plan of allocation of a settlement fund in a class action is "governed by the

24   same standards of review applicable to the approval of a settlement as a whole:  the distribution plan

25   must be "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85

26   (9th Cir. 1992).

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 23 -

DOCS\444998v1

1   "A plan of allocation that reimburses class members based on the extent of their injuries is

2   generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931, 1994 U.S. Dist. LEXIS 21593, at *3

3   (N.D. Cal. June 16, 1994). "A class action settlement need not necessarily treat all class members

4   equally." *Cohen v. Resolution Trust Corp.,* 61 F.3d 725, 728 (9th Cir. 1995), *vacated on other*

5   *grounds*, 72 F.3d 686 (9th Cir. 1996)(citation omitted). "[T]he fact that some class members may

6   recover more than they would have recovered at trial does not necessarily render the plan of

7   allocation unfair to the class as a whole … an allocation of settlement proceeds need not be based on

8   a precise calculation of the damages to which each class member is entitled, as long as the allocation

9   plan as a whole is fair and reasonable." *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283

10   MMC, 2005 U.S. Dist. LEXIS 30880, at *34-35 (N.D. Cal. Nov. 15, 2005).

11   Here, the proposed Plan of Allocation calls for the Net Settlement Fund to be distributed *pro*

12   *rata* to Class members who submit valid forms on the basis of each Authorized Claimant's

13   Recognized Claim. Lead Counsel prepared the proposed Plan of Allocation in consultation with its

14   in-house economic analyst and in conformity with the provisions of the PSLRA. Exhibit A,

15   Westerman Decl. §V, Docket No. 103. The Plan was also reviewed and approved by Jane

16   Nettesheim, a financial economist with Stanford Consulting Group, Inc. Nettesheim Decl. ¶¶ 1-2,

17   Docket No. 105. The proposed Plan of Allocation is based on Plaintiff's theory of the case and

18   reflects the contention that the price of Chiron common stock was artificially inflated by reason of

19   the allegedly false and misleading statements made by Defendants during the Class Period by

20   various amounts as various disclosures were made, and the losses recognized are limited as provided

21   by the PSLRA which caps the recoverable amount based on the mean trading price during the 90-

22   day period following the disclosure rather than basing the recoverable amount on the date the

23   corrective information was disclosed.[7] Because "[a]n allocation formula need only have a

24   _____

25   [7] The PSLRA provides that "…the award of damages to the plaintiff shall not exceed the difference
     between the purchase … price paid … by plaintiff for the subject security and the mean trading price
26   of that security during the 90-day period beginning on the date in which the information correcting
     the misstatement or omission that is the basis for the action is disseminated to the market." 15
27   U.S.C. § 78u-4(e)(1). Where a plaintiff sells the security prior to the 90-day period, "…the

28
PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 24 -

DOCS\444998v1

1    reasonable, rational basis, particularly if recommended by experienced and competent counsel," *In*

2    *re Broadcom Corporation Securities Litigation*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist.

3    LEXIS 41976, at *7 (C.D. Cal. Sept. 12, 2005), the proposed Plan of Allocation should be approved.

4    *See also In re Mego Fin. Corp.*, 213 F.3d at 460, *In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-

5    2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *16-17 (S.D. Cal. June 21, 2004) (approving a

6    plan of allocation based on the difference between the purchase price and the share price on the date

7    of disclosure); *In re Veritas Software Corp.*, 2005 U.S. Dist. LEXIS 30880 (basing the proposed

8    distribution of settlement proceeds on the stock prices in effect on the dates Veritas made the

9    relevant disclosures); *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004)

10   (approving plan of allocation calculating claims according to inflationary loss).  Because the Plan of

11   Allocation uses well accepted economic methods and is based on established precedent relating to

12   damages, it should be approved.

13          The full text of the Plan of Allocation was set forth in the Settlement Notice and none of the

14   Class Members objected or commented thereon.

15   **V.      THE REQUESTED ATTORNEYS FEES AND EXPENSES SHOULD BE
             FINALLY APPROVED**

16

17          When Lead Plaintiff originally sought preliminary approval of the Settlement, the Plan of

18   Allocation and the Award of Attorneys' Fees, this Court raised a number of questions.  Foremost

19   among them the Court questioned the stated intention of Plaintiff's Counsel to seek attorneys' fees of

20   25% of the recovery.  At a case management conference on August 2, 2007, the Court directed

21   Plaintiff's Counsel to submit lodestar information.  Docket No. 118.  Lead Plaintiff's Counsel

22   submitted a Lodestar Report on August 10, 2007.  Docket No. 121.  Thereafter, on September 17,

23   2007, the Court entered an Order directing the parties to produce information concerning, among

24   _____

25   plaintiff's damages shall not exceed the difference between the purchase … price … and the mean
     trading price of the security during the period beginning immediately after dissemination of

26   information correcting the misstatement or omission and ending on the date on which the plaintiff
     sells .. the security."  15 U.S.C. § 78u-4(e)(2).  These rules are often referred to as the "90-day

27   bounce back" rule.

28

1   other things, the years of experience and office locations for each attorney identified in the Lodestar

2   Report.   Docket No. 125.   Lead Plaintiff's Counsel submitted this information, together with

3   information concerning comparative attorney billing rates in Los Angeles and New York, including

4   one of the defense counsel in this Action, Docket Nos. 127, 128.  On November 30, 2007, the Court

5   entered an Order denying preliminary approval of the Settlement.  Docket No. 130.  One of the

6   reasons that the Court denied the motion for preliminary approval was stated to be that "the

7   settlement proposes to pay class counsel fees that, for the amount of time worked, are eight to ten

8   times typical hourly attorney fees."

9       On December 20, 2007, the Court held a case management conference, in which the Court

10  allowed and directed the parties to submit additional information and argument concerning the denial

11  of the motion for preliminary approval of the Settlement.  Docket No. 137.  Following the December

12  20, 2007 Order at a case management conference, the parties discussed whether and how the

13  Settlement might proceed.  The Court raised the possibility of having a Special Master appointed,

14  but Plaintiff expressed concerns due to the candidate's other engagements.  On April 14, 2008, the

15  Court requested that the parties report whether the settlement's terms were being modified and

16  proposed sending the Class a notice from the Court raising its concerns and seeking comments from

17  Class Members.  Docket No. 148.  On April 18, 2008, the parties responded to the Court's Order.

18  Among other things to address the Court's expressed concerns, Lead Plaintiff's response (Docket

19  No. 151) agreed to reduce the requested attorneys' fees to 17% from 25% and agreed to move

20  $227,209.25 for professional support staff to the expense category.

21      On May 10, 2008, the Court issued a Memorandum (Docket No. 154) and a Proposed Notice

22  of Proposed Settlement (Docket No. 155) to be discussed at a case management conference on May

23  12, 2008.  Both sides agreed that the Court's special notice, which became the "Cover Notice,"

24  would be used but provided some comments thereon for discussion with the Court.

25      With the Court's permission, Lead Plaintiff submitted Class Counsel's Report on Lodestar

26  and Expenses dated May 27, 2008 (Docket No. 164), which presented updated lodestar and expense

27  information, including the "Updated Laffey" fee rates, showing that using the "Updated Laffey" fee

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 26 -

DOCS\444998v1

1   rates Lead Plaintiff's Counsel's lodestar amount was $1,380,794 and that the reduced 17% requested

2   fee would represent a multiplier of 3.7.  The Report also showed that expenses, including

3   professional staff as an expense item, then totaled $380,717.82.

4        The Cover Notice (Docket No. 171, at Ex. 1) ultimately issued by the Court included the

5   following recital:

6            "It is appropriate for lead plaintiff's attorneys – who represent lead plaintiffs
         on a contingent basis – to receive some multiple of their hourly rate; this
7        compensates them for the risk of no compensation at all when they undertake
         litigation such as this. It also may be appropriate to increase the multiplier further if
8        the settlement achieved for the class is particularly valuable or the work performed
         by lead plaintiff's counsel particularly difficult. Plaintiff's counsel often receive
9        either 25% of the amount recovered for the class, the benchmark fee in this Circuit,
         or two to four times their reasonable hourly rates for work on securities class action
10       settlements."

11       Lead Plaintiff asserts that the reduced requested 17% fee is appropriately granted in full

12   under the Court's stated criteria given the notice provided to the Class and, as shown below, under

13   all other relevant precedent.

14
         **A.  The Percentage of Fund Method is the Appropriate Method for Awarding
15            Attorneys' Fees in Common Fund Cases**

16       For their efforts in creating a common fund for the benefit of the Settlement Class, Plaintiff's

17   Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees.  The percentage

18   method of awarding fees is an accepted if not the prevailing method for awarding fees in common

19   fund cases in this Circuit and throughout the United States.  A percentage fee award is appropriate

20   because it encourages counsel to obtain the maximum recovery for the class at the earliest possible

21   stage of the litigation and, hence, most fairly correlates Plaintiff's Counsel's compensation to the

22   benefit achieved for the Settlement Class.

23       "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his

24   client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van*

25   *Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).  "[A] private plaintiff, or his

26   attorney, whose efforts create, discover, increase or preserve a fund to which others also have a

27   claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."

28

1   *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is

2   to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the

3   wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power*

4   *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the

5   common fund doctrine, is firmly rooted in American case law.  *See e.g.*, *Trs. v. Greenough*, 105 U.S.

6   527, 26 L. Ed. 1157 (1882); *Cent. R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed.

7   915 (1885).

8          The rationale for compensating counsel in common fund cases on a percentage basis is

9   sound.  First, it is consistent with the practice in the private marketplace where contingent fee

10  attorneys are customarily compensated by a percentage of the recovery.  *See In re Cont'l Ill. Sec.*

11  *Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *amended*, No. 90-3701, 1992 U.S. App. LEXIS 11317 (7th

12  Cir. May 22, 1992).  Second, it more closely aligns the lawyers' interest in being paid a fair fee with

13  the interest of the class in achieving the maximum possible recovery in the shortest amount of time.

14  *See Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("contingent fee uses private incentives

15  rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to

16  the extent his client gains.").  Third, use of the percentage method decreases the burden imposed on

17  the court by eliminating a full-blown, detailed and time consuming "lodestar" analysis while

18  assuring that the beneficiaries do not experience undue delay in receiving their share of the

19  settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989).  Accordingly, the

20  Ninth Circuit has expressly approved the use of the percentage method in common fund cases.  *See*

21  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six Mexican Workers v. Az.*

22  *Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th

23  Cir. 1993).  Other Circuits also overwhelmingly support the percentage method.[8]

24  _____

25  [8] Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees
    in common fund cases. Two circuits have ruled that the **percentage method is mandatory in**
26  **common fund cases**. *Swedish Hosp. Corp. v. Shalala*, 303 U.S. App. D.C. 94 (D.C. Cir. 1993);
    *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Other circuits and
27  commentators have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 28 -

28

1    The percentage method is the preferred method in awarding fees in representative actions in

2   this Circuit. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of

3   percentage method to calculate attorneys' fees). The PSLRA also provides persuasive support for

4   the use of the percentage method of determining attorneys' fees, discussing total attorneys fees in

5   terms of a "***percentage*** of the amount of any damages and prejudgment interest actually paid to the

6   class." 15 U.S.C. § 78u-4(a)(6) (emphasis added). Thus, Plaintiff's counsel's request for

7   preliminary approval of attorneys' fees as a percentage of the fund is consistent with the well-

8   established precedent in this Circuit and the PSLRA.

9

10   **B.    Plaintiff's Counsel's Reduced 17% Fee Request Should Enjoy a Presumption of Reasonableness**

11    The Ninth Circuit has established 25% of the fund as the "benchmark" award for attorneys'

12   fees. *Paul* v. Graulty, 886 F.2d at 272; s*ee also Torrisi v. Tucson,* 8 F.3d at 1376 (reaffirming 25%

13   benchmark); *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000) (same). As noted by the court

14   in *In re Veritas Software Corporation*, 2005 U.S. Dist. LEXIS 30880, "[t]he Ninth Circuit has

15   repeatedly held that 25% of the gross settlement amount is a benchmark for attorneys' fees awarded

16   under the percentage method and that if the Court departs from that benchmark, the record must

17   indicate the Court's reasons for doing so." *Id.,* at *39-40 (citing cases). Ninth Circuit case law

18   suggests that even in a "garden variety" securities class action, counsel is ordinarily entitled to an

19   award of fees in the amount of 25% of settlement. *Id.*, at *40. Additionally, "the median rate for

20   attorneys' fee awards in class actions ranges from 27 to 30 percent." *In re DJ Orthopedics, Inc. Sec.*

21   *Litig.*, No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21, 2004)

22   (citing Thomas E. Willging, et al., Empirical Study of Class Actions in Four Federal District Courts.

23   Final Report to Advisory Committee on Civil Rules 69 (Federal Judicial Center 1996)).

24   _____

25   474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454 (10th Cir. 1988)
     (recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common
26   fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated*
     *Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

27

28

1   Accordingly, the request for a fee of just 17% of the Settlement Amount here is very reasonable

2   considering the contingency risk undertaken by Plaintiff's Counsel, the uncertainties of the litigation,

3   and the significant result achieved on behalf of the Settlement Class.

4

5   **C.    Consideration of Other Relevant Factors Justifies a Fee Award of 17% in This Case**

6       The Ninth Circuit has set forth five factors as pertinent criteria for evaluating the

7   reasonableness of a fee request:

> (i) the results achieved; (ii) the risks of litigation; (iii) the skill required and the
> quality of work; (iv) the contingent nature of the fee and the financial burden carried;
> and (v) awards made in similar cases.

10  *See Vizcaino,* 290 F.3d at 1048-50.   These factors support preliminary approval of Plaintiff's

11  counsel's requested fee.

12      **1.    The Result Achieved**

13      The most critical factor to be considered in granting a fee award is the degree of success

14  obtained.  *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("most

15  critical factor is the degree of success obtained"); *In re Heritage Bond. Litig.*, No. 02-ML-1475-DT

16  (RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal June 10, 2005).

17      The result here, $30 million plus interest plus notice costs, is a substantial recovery.  As

18  noted above, the Settlement represents a recovery of about 10.7% of the Class' estimated maximum

19  damages.  This result is a much larger percentage of recovery than obtained in most other settlements

20  of securities class actions.  A review of recoveries in other securities class action settlements

21  demonstrates that this result is an above-average achievement.  Setting aside the fact that actual

22  provable damages could well have ended up to be significantly less than Plaintiff's maximum

23  estimate, some studies show that the median percentage of investor losses recovered in shareholder

24  class action settlements was 2.7% in 2002, 2.8% in 2003, and 2.3% in 2004.  *See Heritage Bond*,

25  2005 U.S. Dist. LEXIS 13627, at *27-28 (citing *Recent Trends in Securities Class Action Litigation:*

26  *2003 Early Update,* 1430 PLI/Corp. 429, 440, 437 (Practicing Law Institute Corporate Law and

27  Practice Course Handbook Series, May 20-21, 2004)); *see also* Elaine Buckberg et al., Study of

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 30 -

DOCS\444998v1

1   *Recent Trends in Securities Class Action Litigation, 2003 Early Update* 8, *available at*

2   http://ww.nera.com/publiction.asp?p_ID=122 (NERA Economic Consulting Feb. 2004).  In 2005,

3   settlements were approximately 3% of plaintiffs' estimated damages.  *See* Laura E. Simmons &

4   Ellen M. Ryan, *Post-Reform Act Securities Settlements, 2005 Review and Analysis* 5, *available at*

5   http://www.cornerstone.com/pdf/practice_securities/PostReformActSecuritiesSettle2005.pdf

6   (Cornerstone Research 2006).  In 2006, median recoveries were just 2.2% of losses.  *See* Foster et

7   al., *Recent Trends in Shareholder Class Action Litigation:  Filings Plummet, Settlements Soar* 9,

8   *available at* http://www.nera.com/publication.asp?p_ID=3028.  Thus, the 10.7% recovery achieved

9   in this case is multiple times higher than the average.

10        When measured against the results in comparable cases, Lead Counsel achieved a

11   significantly greater-than-average recovery for Settlement Class members.  The Settlement is quite

12   possibly more than what might have been recovered from Defendants in the absence of a settlement.

13   Lead Counsel submit that the "results achieved" factor here strongly supports awarding the full 17%

14   reduced fee requested.

15                    **2.        The Risks of Litigation**

16        Risk is an important factor in determining a fair fee award.  *See e.g.*, *WPPSS*, 19 F.3d at

17   1299-1301; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp*., 540 F.2d 102, 117 (3d

18   Cir. 1976).  As set forth in the Westerman Declaration (Exhibit A, Docket No. 103), and as

19   discussed above, substantial risks and uncertainties were present from the outset of this case that

20   made it far from certain that any recovery from Defendants for the Settlement Class would be

21   obtained.  Among  other things, Defendants asserted in their motions to dismiss that the complaint

22   failed to plead a "strong inference of *scienter*" under the PSLRA, that they had no motive to commit

23   the fraud, and that the challenged statements were protected under the PSLRA's safe harbor

24   provision.  While courts have always recognized that securities class actions carry significant risks,

25   post-PSLRA motion to dismiss rulings in this District make it clear that the risk of no recovery (and

26   hence no fee) has increased exponentially.

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW                - 31 -

DOCS\444998v1

1       The obstacles and risks to plaintiffs with securities claims has increased greatly over the last

2 decade or so. New ideas have limited damage claims. S*ee Dura Pharms., Inc. v. Broudo*, 544 U.S.

3 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), *City of Burlington v. Dague*, 505 U.S. 557, 112 S.

4 Ct. 2638, 120 L. Ed. 3d 449 (1992). Aiders and abettors have been granted immunity from liability.

5 S*ee Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 114 S. Ct. 2439, 128 L. Ed. 2d

6 119 (1994). Scheme participants have been relieved of responsibility. *Stoneridge Inv. Partners,*

7 *LLC, v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 169 L. Ed. 3d 627 (2008). Expert testimony has been

8 greatly limited. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 3d

9 469 (1993). In this environment, the attorney asked to bring a securities claim on a contingency fee

10 basis faces a great deal of risk that apparently meritorious claims will not survive. If that claim is

11 successfully prosecuted, the fee award should reward the attorney for accepting the risk.

12       The reality of the risks is further confirmed by reference to just some of the many recent

13 cases that were dismissed with prejudice for failure to meet the pleading standard, including: *In re*

14 *Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295 PJH, 2007 U.S. Dist. LEXIS 21953 (N.D.

15 Cal. Mar. 9, 2007); *In re iPass, Inc. Sec. Litig.*, No. C-05-00228 MHP, 2006 U.S. Dist. LEXIS

16 63654 (N.D. Cal. Sept. 5, 2006); *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944 (C.D.

17 Cal. 2003); *In re FVCcom Sec. Litig.*, 136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd*, 32 Fed. Appx.

18 338 (9th Cir. 2002); and *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209 (N.D. Cal. 2000),

19 *aff'd*, 283 F.3d 1079 (9th Cir. 2002).

20       Even if the complaint withstood Defendants' motions to dismiss, there is no doubt that

21 Defendants would have mounted strong attacks on Lead Plaintiff's ability to prove *scienter* during

22 the ongoing litigation and on summary judgment. *See e.g. Churchill Vill. L.L.C. v. GE*, 361 F.3d

23 566, 576 (9th Cir. 2004) (concluding district court properly weighed risk of further litigation when it

24 concluded defendant's belief that it had a strong case on the merits supported finding that the

25 settlement was fair, adequate and reasonable). In addition, Lead Plaintiff faced substantial risks in

26 proving causation and damages. Even if successful at trial, Lead Plaintiff faced substantial risks of

27 dismissal and years of appellate practice in the Ninth Circuit.

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 32 -

1    Lead Counsel here achieved an excellent result in obtaining more than $30 million for the

2    Class.   Considering the very substantial risks overcome to get this recovery, approval of the

3    requested fee is fully justified.

4                    **3.        The Skill Required and the Quality of the Work**

5    The successful prosecution of the complex claims in this case required the participation of

6    highly skilled and specialized attorneys.  *See Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *39

7    (the "'prosecution and management of a complex national class action requires unique legal skills

8    and abilities."') (citation omitted).   Plaintiff's Lead Counsel are among the most experienced and

9    skilled practitioners in the securities litigation field.   From the outset, Lead Counsel engaged in an

10   effort to obtain the maximum recovery for the Settlement Class.   As a result of these efforts, Lead

11   Counsel was able to negotiate a very favorable settlement.   Such quality, efficiency and dedication

12   by Lead Counsel should be rewarded.  *See, e.g., J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78

13   Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

14   The quality of opposing counsel is also important in evaluating the quality of the work done

15   by Lead Counsel.  *See, e.g., In re Equity Funding Corp. Sec. Litig*., 438 F. Supp. 1303, 1337 (C.D.

16   Cal. 1977); *In re King Res. Co. Sec Litig.,* 420 F. Supp. 610, 634 (D. Colo. 1976); *Arenson v. Bd. of

17   Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).   Lead Plaintiff was opposed by Skadden Arps Slate

18   Meagher & Flom LLP, a law firm with a reputation for exceptional work in defending securities

19   class actions.   The ability of Plaintiff's Lead Counsel to obtain such a favorable settlement for the

20   Class in the face of formidable legal opposition further reflects the superior quality of its work, and

21   fully supports an award of the full amount of the fee requested.

22

23                    **4.        The Contingent Nature of the Fee and the Financial Burden
                         Carried by Plaintiff's Lead Counsel**

24   A determination of a fair fee must include consideration of the contingent nature of the fee

25   and the difficulties that were overcome in obtaining the settlement.  *See WPPSS*, 19 F.3d at 1299-

26   1300 ("It is an established practice in the private legal market to reward attorneys for taking the risk

27   of non-payment by paying them a premium over their normal hourly rates for winning contingency

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW          - 33 -

DOCS\444998v1

1   cases.") (internal citations and quotations omitted).  When Plaintiff's Lead Counsel undertook to act

2   as counsel for Lead Plaintiff in this action on a wholly contingent basis, it understood that it was

3   embarking on complex, expensive and lengthy litigation with no guarantee of compensation for the

4   significant investment of time, money and effort the case would require.  In particular, Plaintiff's

5   Lead Counsel was aware of the difficult hurdle that the PSLRA presented to this case, as a high

6   percentage of cases in this Circuit have been dismissed at the pleading stage in response to

7   defendants' arguments that the complaints do not meet the PSLRA's heightened pleading standards.

8   *See e.g.*, *In re Skechers U.S.A., Inc. Sec. Litig.*, CV 03-02094 PA (Ex), 2004 U.S. Dist. LEXIS 12570

9   (C.D. Cal. May 10, 2004) (dismissing consolidated and first amended complaints); *Osher v. JNI*

10  *Corp.*, 308 F. Supp. 2d 1168 (S.D. Cal. 2004), *aff'd in part*, 183 Fed. Appx. 604 (9th Cir. 2006).  In

11  addition, many dismissals have been affirmed on appeal.  *See, e.g., In re Skechers U.S.A., Inc. Sec.*

12  *Litig.,* No. 05-55980, 2008 U.S. App. LEXIS 8349 (9th Cir. April 10, 2008); *In re Read-Rite Corp.*

13  *Sec. Litig.,* 335 F.3d 843, 848-49 (9th Cir. 2003) (affirming dismissal of securities action for failure

14  to state claim); *Gompper v. VISX, Inc.,* 298 F.3d 893 (9th Cir. 2002); *In re Syntex Corp. Sec. Litig.,*

15  95 F.3d 922 (9th Cir. 1996).

16          As noted by a district court:

17          Although today it might appear that risk was not great based on Prudential
            Securities' global settlement with the Securities and Exchange Commission, such
18          was not the case when the action was commenced and throughout most of the
            litigation.  Counsel's contingent fee risk is an important factor in determining the fee
19          award.  Success is never guaranteed and counsel faced serious risks since both trial
            and judicial review are unpredictable.  Counsel advanced all of the costs of litigation,
20          a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

21  *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888 Section: "E", 1994 U.S.

22  Dist LEXIS 6621, at *16 (E.D. La. May 18, 1994).

23          Even if this case survived Defendants' motions to dismiss, the many appellate decisions

24  affirming summary judgment and directed verdicts for defendants also show that surviving a motion

25  to dismiss is no guarantee of recovery.  *See e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407

26  (9th Cir. 1994); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991).

27

28

1    Plaintiff's counsel have received no compensation for their efforts during the course of this

2    Litigation, and risked non-payment of its out-of-pocket expenses.  Absent this settlement, there was

3    a sizeable risk that Plaintiff and the Settlement Class members, as well as their counsel, would obtain

4    no recovery.  The contingent nature of the fee fully supports an award of the requested 17% fee (and

5    indeed would support a much higher fee).

6         **5.      The Awards Made in Similar Cases**

7         Lead Plaintiff's Counsel have agreed to limit their fee request to 17% of the benefit achieved.

8    It is respectfully submitted that awards made in other cases could support a higher fee, such as the

9    25% "benchmark" award for attorneys' fees in the Ninth Circuit.  *See Powers v. Eichen*, 229 F.3d at

10   1256-57; *Paul v. Graulty*, 886 F.2d at 276; *Six Mexican Workers v. Ax. Citrus Growers*, 904 F.2d at

11   1311.  District courts in this Circuit have consistently awarded this benchmark, or higher.  *See In re*

12   *Mego Fin.  Corp. Sec. Litig*., 213 F.3d at 460 (33.3% fee award upheld); *In re Heritage Bond Litig.*,

13   2005 U.S. Dist. LEXIS 13555, at *74 (approving 33-1/3% of recovery for attorneys' fees).[9]  Courts

14   in other Circuits also consistently grant fee awards of 25% or above.[10]

15        The fee requested here is quite modest compared to awards in similar class action cases.  A

16   Federal Judiciary Center study released in 1996, which covered all class actions in four selected

17   _____

18   [9] *See also, e.g., Garbini v. Prot. One, Inc., et al.*, No. 99-3755-DT(RCx) (C.D. Cal. Nov. 4, 2002)
     (30% fee award on $7.5 million recovery); *In re Lifescan, Inc. Consumer Litig.*, No. C-98-20321-JF
19   (N.D. Cal. Mar. 18, 2002) (fee equal to 33% of recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*,
     No. C-97-4362-SI (N.D. Cal. Jan. 3, 2002) (fee equal to 30% of recovery); *In re Sybase Inc. II Sec.*
20   *Litig.*, No. C-98-0252-CAL (N.D. Cal. Sept. 29, 2000) (fee equal to 30% of recovery); *Provenz v.*
     *Miller*, No. C-92-20159-RMW(EAI) (N.D. Cal. Aug. 23, 1999) (fee equal to 33-1/3% of total
21   recovery); *In re Spectrian Corp. Sec. Litig.*, No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000) (fee equal
     to 30% of recovery); *Schlagal v. Learning Tree Int'l, Inc.*, No. CV-98-6384-GAF(Ex) (C.D. Cal.
22   Aug. 7, 2000) (fee equal to 30% of recovery).

23
     [10] *See, e.g., In re McLeodUSA Inc. Sec. Litig.*, No. C02-0001-MWB (N.D. Iowa, Cedar Rapids
24   Division Jan. 5, 2007) (awarding 30% of $30 million cash settlement fund); *In re Tellium Inc Sec.*
     *Litig.*, No. 02-CV-5878 (D.N.J. Sept. 7, 2006) (awarding 33% of $5.5 million cash settlement fund);
25   *In re PNC Fin. Servs. Group, Inc. Sec. Litig.*, No. 02-CV-271 (W.D. Pa. July 13, 2006) (awarding
     28% of $36.6 million cash settlement fund); *In re Metromedia Fiber Network, Inc. Sec. Litig.*, No.
26   01 Civ. 7353 (CLB) (S.D.N.Y. Dec. 22, 2005) (awarding 30% of $8,750,000 cash settlement fund).

27

28

1    federal district courts with a high number of class actions, including the Northern District of

2    California, found that as to the size of attorneys' fees: "Median rates ranged from 27% to 30%."

3    Willging et al., *Empirical Study of Class Actions in Four Federal District Courts: Final Report to*

4    *the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996).  This finding is in line

5    with an analysis of fee awards in class actions conducted in 1996 by National Economic Research

6    Associates ("NERA"), an economics consulting firm which,  using data from 433 shareholder class

7    actions, concluded: "Regardless of case size, fees average approximately 32 percent of the

8    settlement." Denise N. Martin et al., *Recent Trends IV - What Explains Filings and Settlements in*

9    *Shareholders Class Actions?* 12-13 (NERA Nov. 1996).[11]

10

11   **VI.    PLAINTIFF'S LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
         **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

12        Lead Counsel also requests final approval for reimbursement of $380,717.82 of expenses,

13   including professional staff costs, incurred in connection with the prosecution of this action.  Costs

14   that are of the type typically billed by attorneys to paying clients in the marketplace should be

15   reimbursed.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the

16   award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee

17   paying client.'") (citation omitted); *see also*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362,

18   1366 (N.D. Cal. 1996); *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th

19   Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier*

20   *Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them);

21   *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be

22

23   [11]  If this were a non-representative litigation, the customary fee arrangement would be contingent,
     on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum v. Stenson*, 465 U.S.

24   886, 904, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ("In tort suits, an attorney might receive one-
     third of whatever amount the plaintiff recovers."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-

25   0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent
     litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *In*

26   *re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (same).  Thus, the customary
     contingent fee in the private marketplace - 30% to 40% of the fund recovered - is much higher than

27   the percentage fee requested in this case.

28

1   compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

2   clients, as long as they 'were incidental and necessary to the representation' of those clients.")

3   (citation omitted).

4      The requested costs and expenses are listed by category in the May 27, 2008 report, Docket

5   No. 164.  Plaintiff's Counsel request that payment of these expenses to counsel, should be approved.

6   **VII.**   **THE RESPONSE OF THE CLASS**

7      The Cover Notice and Settlement Notice advised Class Members that they could:  (i) object

8   to the Settlement, Plan of Allocation and/or Award of Attorneys' Fees and Expenses;  (ii) request to

9   be excluded from the Class; or (iii) submit a Proof of Claim to share in the Settlement Fund.  To

10  facilitate Class Members submission of comments, the Cover Notice encouraged Class Members to

11  give the Court "feedback" by submitting their comments by e-mail:

12     "If you have any comments about the proposed settlement, please email the court and
13     the parties' counsel at chironlitigation@gilardi.com.  For your comments to be
       considered, please include your name, the purchase and sale dates of any Chiron
       stock you acquired between July 23, 2003 and October 5, 2004, and the number of
14     shares you acquired or sold on each date.  This information will confirm that you are
       a member of the class."

15     Except for participants in the Chiron Employee Stock Purchase Plan, Class Members were

16  supposed to submit any objections or exclusion requests by August 18, 2008.  As indicated in the

17  accompanying Joaquin Affidavit, as of October 28, 2008 only six (6) objections and seven (7)

18  exclusion requests have been received, while 5,288 Proofs of Claim have been received (the deadline

19  for submitting Proofs of Claim is not until November 1, 2008, so it is reasonable to expect a good

20  number of additional Proofs of Claim to be submitted by that date).

21     It is respectfully submitted that the overall response of the Class is thus very favorable.

22     The objections received are discussed below:

23     1.)   **OBJECTION** from Mr. Steve Rogers:

24     The first objection received was from Stephen Rogers who wrote:

25       The Honorable Chief Judge Vaughn R. Walker-

26

27

28  | PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW | - 37 - |
    | --- | --- |

Many thanks for the recent update with regard to the proposed Chiron Corporation Securities Litigation.  In response to your request for comments, I offer the following:

1)    I am presuming that there is no finding of guilt or innocence on the part of Chiron/Novartis, and that this settlement is an attempt to stem the cost that are accruing to the corporation and therefore harming current shareholders.

2)    The proposed settlement is immaterial (400 shares * .00.68)  to me and most individual shareholders, it represented a virtually free option to the pension fund suing, and excess compensation to the law firms pursuing the case. The loss to shareholders is virtually impossible to determine, if indeed there was any.

Please end this suit as quickly and cheaply as possible, as the courts valuable time is being wasted, and the attorneys are getting rich.

Thanks

Steve Rogers

**RESPONSE to OBJECTION** from Mr. Steve Rogers:

Mr. Rogers failed to state his trading information, so we do not know whether he really is a Class Member, or suffered any loss on Chiron stock, which may explain why he states "The proposed settlement is immaterial (400 shares * .00.68) to me."  Using his math he would be receiving $272.00, net of fees and expenses, which is not bad for filling in a Proof of Claim form.

Mr. Rogers appears to think settlement is not an appropriate result and that only a finding of guilt or innocence [liability or no liability] should be allowed.  This is contrary to the law, which encourages settlement, and potentially could lead to much worse results for Class Members (if not liable), or for harming current shareholders (if liable).

Mr. Rogers is also simply wrong to claim that the "loss to shareholders is virtually impossible to determine."  While, if the case went to trial, expert testimony might be required to measure the damages, in a situation where as here the corrective disclosure of previously omitted known information about the Fluviron manufacturing problems caused a precipitous drop in Chiron's stock price, proving damages would not be the most difficult issue.

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 38 -

1    Nothing in Mr. Roger's objection presents a legally cognizable reason not to approve the

2    Settlement.  Plaintiff also objects to consideration of Mr. Roger's comments as he did not comply

3    with the Notice and provide information with respect to his purchase sufficient to establish his

4    standing to object.

5         2.)      **OBJECTION** from Ms. Laurie Lamb:

6    The second objection was received was from Laurie Lamb who wrote:

7              To the court:

8              This notice of class action suit is the latest of many which we have received
     from our now closed Smith Barney stock account.  It represents, to me, a cycle of
9    dishonesty and greed from both the companies involved and the legal firms
     representing them.
10

11             Our interests are not being protected by companies who issue dishonest
     publicity as well as by greedy lawyers receiving 25% of the profits from their work,
12   far exceeding their billable work performed!

13             This scenario is ridiculous, and yet another cause of the wealthy gaining
     wealth at the expense of the rest of us.
14

15             Sincerely,
               Laurie Lamb
16

17   **RESPONSE to OBJECTION** from Ms. Laurie Lamb:

18   Ms. Lamb failed to state her trading information, so we do not know whether she really is a

19   Class Member, or suffered any loss on Chiron stock.

20   The object of the federal securities laws is to require issuers to provide the investing public

21   with timely and truthful information about the company.  The securities class action is intended to

22   deter misrepresentations and to compensate class members who are harmed when allegedly

23   materially false or misleading statements are made by issuers of publicly traded securities.  The

24   encouragement to counsel to undertake massive risks and advance tremendous costs in prosecuting a

25   securities class action is the prospect of a handsome fee if the action is successful.  While this may

26   be an imperfect mechanism for assuring that companies tell the truth, it is the way our federal

27   securities laws are intended to work.

28
PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 39 -

1    Ms. Lamb also directs her ire at the "legal firms representing them," *i.e.* the companies

2  involved, and is not directed at plaintiff's counsel.  While she complains about "greedy lawyers"

3  receiving 25%, she does not state any specific criticism of the Settlement, or the actual fee request in

4  the Notice, which was only 17%.

5    Ms. Lamb's objection does not raise a legally cognizable reason not to approve the

6  Settlement.  Plaintiff also objects to consideration of Ms. Lamb's comments as she did not comply

7  with the Notice and provide information with respect to her purchase sufficient to establish her

8  standing to object.

9    3.)    **OBJECTION** from Mr. Jerome Gleim:

10    The next objection was received was from Mr. Jerome Gleim who wrote:

11        I received a notice in the mail of the Chiron class action suit.  My name is
      Jerome Gleim and owned 915 shares of Chiron stock purchased between 7/23/03 and
12      10/5/04.  I sold all of the shares in December 2004 for a total loss of $15,937.
      I believe the settlement is entirely too low and the attorney fees are out of line.
13

14  **RESPONSE to OBJECTION** from Mr. Jerome Gleim:

15    As demonstrated above, the proposed Settlement is not "too low" but is for a larger

16  percentage of the maximum plaintiff's estimate of damages than most other settlements that have

17  been approved, and as such represents a very good result here, especially in light of the uncertain

18  status of the pending motions to dismiss, and the failure of any of the many government entities that

19  reviewed the circumstances of this case to take any action.  While Lead Plaintiff and Plaintiff's

20  Counsel sought to get the highest recovery that they could, they believe this Settlement is the best

21  result available and that proceeding to litigate it through further steps was not worth the additional

22  risks that would be encountered.

23    Also demonstrated above, the requested fees are not "out of line" but are well supported by

24  the Court's stated criteria and by overwhelming precedent.

25    Mr. Gleim's objection does not raise a legally cognizable reason not to approve the

26  Settlement or the requested attorneys' fee.

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

DOCS\444998v1

- 40 -

1    4.)    **OBJECTION** from Mr. Leland G. Coe:

2    The next objection was received was from Lee Coe who wrote:

3            This is in reply to your document requesting I e-mail you with the dates I
     purchased/sole Chiron securities.

4

5            I purchased 100 shares of Chiron on 8-12-03 and sold the same 100 shares on
     7-29-04.

6
             I am also concerned about the fees which the lead attorneys have requested
7    and suggest they be lowered to some semblance of the hours expended by the
     attorneys with a bonus for getting the settlement to an early conclusion.

8
             My name is    Leland G. Coe
9

10   **RESPONSE to OBJECTION** from Mr. Leland G. Coe:

11   As demonstrated above, the requested 17% fee has already been lowered from the benchmark

12   rate of 25% and the requested fee is well supported by the Court's stated criteria and by

13   overwhelming precedent.

14           Mr. Coe's objection does not raise a legally cognizable reason not to approve in full

15   requested 17% attorneys' fee.

16   5.)    **OBJECTION** from Roy W. Fogle and Patricia A. Fogle, Trustees of the Roy W &

17   Patricia A. Fogle Trust dated 12/28/1998:

18   The next objection was received was from Trustee Roy Fogle who wrote:

19           To whom it may concern;

20           Our names are Roy W. and Patricia A. Fogle, trustees of the Roy W &
21   Patricia A. Fogle Trust dated 12/28/1998.  We acquired 100 shares of stock on
     9/28/2004 and sold it on 10/18/2004.

22
             We profess not to have the wisdom of the court but as common individuals
23   trying to understand what has happened.  In the notice of proposed settlement the
     court has outlined some concerns it has on the settlement.  The relationship of the
24   settlement to the median securities class action settlement does show a concern.  The
     amount of proposed settlement being approximately 1/3 less than the median.
25
             The relationship between lead plaintiff counsel and the defendant's counsel
26   does raise some eyebrows.  It is hard to believe there was no inter-mingling in this
27   litigation.  Granted lawyer fees are normally in the 25% range, this case may be
     different in that the work done, i.e. billable hours, may not justify the fees requested.

28

1   Also the moving of fees requested to be paid as expenses may be a devious way to
2   incur additional monies for work supposedly done since I believe expenses are paid
    first then the fees out of the remaining funds.

3        We may be off base on our assessment but for the little person, like us, causes
4   concern in the lawyers request for monies.  We submit to the wisdom and guidance
    of the court in this matter.  Thank you.

5

6   **RESPONSE to OBJECTION** from Roy W. Fogle and Patricia A. Fogle, Trustees of the

7   Roy W & Patricia A. Fogle Trust dated 12/28/1998:

8        With respect to the quality of the recovery, we respectfully submit that the Court's

9   comparison of the recovery here to the "one day market value decline" in Chiron common stock,

10  which is the subject of the Fogles' "1/3 less than the median" comment, is not the prevailing

11  standard, as discussed above.  The huge drop in the overall company market value was not a number

12  related to the alleged damages of the Class.  Vast numbers of Chiron shares were purchased before

13  the Class Period, at prices unaffected by the alleged misrepresentations and for which no damages

14  could be alleged.  The proposed Settlement actually represents a much larger percentage recovery

15  than most, when the recovery is compared to the estimated maximum recoverable damages.

16       With respect to the alleged "relationship" between Lead Plaintiff's Counsel and Defendants

17  Counsel, there was no actual conflict or any other impropriety.  A review of the record as suggested

18  in the Cover Notice ("For a fuller discussion of this issue, including a declaration by the Skadden

19  attorney involved, *see* Doc No. 130 at 29-35, Doc No. 152, Exh. 2 and 3, and Doc No. 162, at

20  www.chironlitigation. com") should satisfy any objective reviewer that there was no improper

21  "inter-mingling in this litigation"

22       With respect to our lowered fee request of just 17% of the amount recovered, which is far

23  less than the amount the Fogle Trustees admit "are normally in the 25% range" we submit the

24  requested fees are fair for all the reasons stated in <u>Section V</u> above.

25       With respect to the move of professional staff costs to the expense category and out of the fee

26  side, this was done in compliance with the Court's directions.

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

DOCS\444998v1

- 42 -

1    It is respectfully submitted that the Fogle Trustees' objection does not raise a legally

2 cognizable reason not to approve the Settlement or the requested attorneys' fee.

3    6.)    **OBJECTION** from Mr. Peter Williamson and Ms. Margaret Williamson:

4    The last objection was received as of this writing was from Peter Williamson and Margaret

5 Williamson who wrote:

6        To: The Court

7        My wife and I each purchased 500 shares of Chiron common stock on
         September 10, 2004 and sold it on January 3, 2005 so we are included in the class of
8        shareholders in the Chiron class action lawsuit.

9        The court has asked for comments regarding the Quality of the Settlement.
10       We believe that the settlement amount is very low but it is probably the best we can
         hope for. However, with regard to the Attorney Fees, we believe that they are
11       grossly excessive and award the attorneys with fees that are not justified by the work
         they did and the risk they took. Two times the hourly rates used by the court
12       ($718,236.81) would be fair. We hope that the court can resist pressure to
         compromise and will not agree to a higher figure.
13

14       Thank you for giving us the opportunity to comment.

15       Peter and Margaret Williamson

16   **RESPONSE to OBJECTION** from Mr. Peter Williamson and Ms. Margaret Williamson:

17   As demonstrated above, the proposed Settlement is not "very low" but is for a larger

18 percentage of the maximum plaintiff's estimate of damages than most other settlements that have

19 been approved. As such the Settlement represents a very good result here. We think that the

20 Williamsons are correct in their assessment that "it is probably the best we can hope for."

21   Also demonstrated above, the requested fees are not "grossly excessive" but are well

22 supported by the Court's stated criteria and by overwhelming precedent. The hourly rates originally

23 cited by the Court were out of date and not applicable, and should not be used. *See* in particular

24 Docket No. 151 (showing the Updated Laffey Matrix rates); *see also* Docket No. 164, Class

25 Counsel's Report Re Lodestar and Expenses (showing that under the Updated Laffey rates,

26 Plaintiff's lodestar is $1,380,794, and the requested fee represents a multiple of approximately 3.7

27 times this lodestar). The requested multiplier of 3.7 is within the range used in this Court's criteria

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 43 -

1   and when considered as a percentage of the recovery, the 17% requested is already well below the

2   benchmark.

3          The Williamsons' objection does not raise a legally cognizable reason not to approve the

4   Settlement or the requested attorneys' fee.

5                                              * * *

6          The foregoing six (6) objections claim in the aggregate purchases of only 2,515 shares of

7   Chiron common stock during the Class Period, an infinitesimal fraction of the 36 million shares

8   traded during the Class period.  On the other hand, so far Class Members have submitted some 5,288

9   Proofs of Claim, a ratio of more than 881 claims to each objection.

10         Plaintiff submits that the objections are without merit, and are far outweighed by the Class

11  Members who want the Settlement approved so that they can share in its proceeds.  The objections

12  submitted do not present any factual or legal reason not to approve the foregoing and should all be

13  overruled.

14  **VIII.  <u>CONCLUSION</u>**

15         The proposed Settlement is an excellent recovery for the class, represents a far higher

16  percentage of the potential maximum damages than typically recovered in a securities class action,

17  and should be approved as a fair, reasonable and adequate settlement.  The proposed Plan of

18  Allocation is a fair and reasonable method for allocating the proceeds of the Settlement to Class

19  Members and should be approved.  The requested 17% attorneys' fee award should be approved in

20  full, as it is lower than the benchmark fee and is fully supported by this Court's stated criteria for fee

21  awards and is within the range of fees approved in this District and Circuit.  The objections

22  submitted do not present any factual or legal reason not to approve the foregoing and should all be

23  overruled.

24

25  DATED:  October 29, 2008                         MILBERG LLP
                                                     JEFF S. WESTERMAN
26

27                                        _____
                                                  */s/ Jeff S. Westerman*
28                                                JEFF S. WESTERMAN

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW
DOCS\444998v1

- 44 -

One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
Email: jwesterman@milberg.com

MILBERG LLP
GEORGE A. BAUER III
ANITA KARTALOPOULOS
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
Email: gbauer@milberg.com
Email: akartalopoulos@milberg.com

Lead Counsel for the Class

KROLL HEINEMAN GIBLIN, LLC
VINCENT M. GIBLIN
99 Wood Avenue South, Suite 307
Iselin, NJ  08830
Telephone:  (732) 491-2100
Facsimile:   (732) 491-2120
Email: vgiblin@krollfirm.com

Lead Counsel for Plaintiffs

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 45 -

DOCS\444998v1

1    **DECLARATION OF SERVICE BY E-MAIL AND U.S. MAIL**

2    I, the undersigned, declare:

3    1.    That declarant is and was, at all times herein mentioned, employed in the County of

4    Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that

5    declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los

6    Angeles, California 90071-3149.

7    2.    That on October 30, 2008, declarant will serve the PLAINTIFF'S NOTICE OF

8    MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF

9    ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO

10   COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMORANDUM OF POINTS

11   AND AUTHORITIES IN SUPPORT THEREOF by depositing a true copy thereof in a United States

12   mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and

13   addressed to the parties listed on the attached Service List.

14   3.    That there is a regular communication by mail between the place of mailing and the

15   places so addressed.

16   4.    That on October 29, 2008, a true and correct copy of this document is being e-mail

17   served to the following persons who commented on the settlement by e-mail:

18   (a)    Mr. Steve Rogers at [mailto:roges57@yahoo.com];

19   (b)    Ms. Laurie Lamb at [mailto:bllamb@earthlink.net];

20   (c)    Mr. Jerome Gleim at [mailto:JGleim@aol.com];

21   (d)    Mr. Leland G. Coe at [mailto:leecoe@paulbunyan.net];

22   (e)    Roy W. Fogle and Patricia A. Fogle, Trustees of the Roy W & Patricia A.

23   Fogle Trust dated 12/28/1998 at [mailto:prfogle@sbcglobal.net]; - and -

24   (f)    Mr. Peter Williamson and Ms. Margaret Williamson at

25   [mailto:pwmcw@cox.net].

26   5.    That on October 29, 2008, declarant served the above document to

27   scac@law.stanford.edu.

28

1        I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th

2    day of October, 2008, at Los Angeles, California.

3

4    _____

5          ELIZABETH VILLALOBOS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND
AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS
MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 47 -

DOCS\444998v1

1

<u>**SERVICE LIST**</u>

2

*Richard Gregory v. Chiron Corporation, et al.*
USDC ~ San Francisco - Case No.C-04-4293-VRW

3

| 4 | ***Counsel for Plaintiffs*** | |
|---|---|---|
| 5 | Jeff S. Westerman<br>Elizabeth P. Lin<br>MILBERG LLP<br>One California Plaza<br>300 S. Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile: (213) 617-1975 | George A. Bauer III<br>Anita Kartalopoulos<br>MILBERG LLP<br>One Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229 |
| 9<br>10<br>11 | KROLL HEINEMAN GIBLIN LLC<br>99 Wood Avenue South, Suite 307<br>Iselin, NJ 08830<br>Telephone: (732) 491-2100<br>Facsimile: (732) 491-2120 | Lionel Glancy<br>GLANCY BINKOW & GOLDBERG LLP<br>1801 Ave. of the Stars, Suite 311<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150<br>Facsimile: (310) 201-9160 |
| 12<br>13<br>14<br>15 | Brian P. Murray<br>MURRAY, FRANK & SAILER LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Telephone: (212) 682-1818<br>Facsimile: (212) 682-1892 | Vincent Giblin<br>PITTA & DREIER LLP<br>499 Park Avenue<br>15th Floor<br>New York, New York 10022<br>Telephone: (212) 652-3890<br>Facsimile: (212) 652-3891 |
| 16 | ***Counsel for Defendants*** | |
| 17<br>18<br>19<br>20 | James E. Lyons<br>Amy Park<br>SKADDEN ARPS SLATE MEAGHER & FLOM LLP<br>Four Embarcadero Center, Suite 3800<br>San Francisco, CA 94111<br>Telephone: (415) 984-6400<br>Facsimile: (415) 984-2698 | Eric Waxman<br>SKADDEN ARPS SLATE MEAGHER & FLOM LLP<br>300 S. Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 687-5000<br>Facsimile: (213) 687-5600 |
| 21<br>22<br>23<br>24 | Paul K. Rowe<br>Rachelle Silverberg<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Facsimile: (212) 403-2000 | |

25

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 48 -

DOCS\444998v1

| 1 | ***Other Counsel*** | |
|---|---|---|
| 2 | Jeffrey R. Krinsk<br>FINKELSTEIN & KRINSK | |
| 3 | 501 W. Broadway, Suite 1250<br>San Diego, CA  92101-3593 | |
| 4 | Telephone: (619) 238-1333<br>Facsimile:  (619) 238-5425 | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S NOTC OF MOT & MOT IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND IN REPLY TO COMMENTS AND OBJECTIONS FROM CLASS MEMBERS; MEMO OF POINTS & AUTH IN SUPPORT THEREOF~ CASE NO.: C-04-4293-VRW

- 49 -

DOCS\444998v1